# George W. Van Buren v. The St. Joseph County Village Fire Insurance Company.

*Insurance: Policy: Application: By-laws: Mortgaged property: Value.* A policy of insurance in a mutual company, which embraces the charter and by-laws of the association, and provides for making all policy-holders members of the association and bound by the charter and by-laws, and which is issued upon a written application required by the by-laws and made a part of the contract and a warranty of the truth of the statements contained in it, and containing an agreement to be bound by the charter and by-laws, is held void in this case, where the insurance was in violation of a by-law providing that any policy issued on property mortgaged to an amount equal to or exceeding one-half its value shall be void, and that mortgaged property shall not be insured to an extent so that the amount of the insurance and the mortgages together shall exceed three-fourths of its cash value, and where the property was mortgaged to an amount larger than that stated in the application, and there was no proof of knowledge by the company of the value of the property or of the extent of the incumbrances.

VAN BUREN *v.* ST. JOSEPH CO. VILLAGE FIRE INS. COMPANY.

*Insurance: Mortgagee: Mortgagor's interest: Contract.* The fact that the insurance was for the benefit of the mortgagee, and so stated in the application and the policy, does not cure the violation of the by-law, where the contract is one between the company and the mortgagor, and it is the interest of the mortgagor, and not of the mortgagee, that is insured.

*Insurance: Owner: Mortgagee.* Under a policy insuring the interest of the owner for the benefit of his mortgagee, where the right of action is vested in the former and he brings the suit, whatever will defeat his right of recovery must of necessity defeat any right of the mortgagee derived through him.

*Insurance companies: Agents: Notice.* The question considered how far and in what cases insurance companies are bound by the knowledge, acts, assurances and representations of their agents beyond or contrary to particular provisions of their policies.

*Application for insurance: Presumptions: Applicant.* A person applying and contracting in writing for insurance is presumed to understand the general nature and fundamental principles of the contract he enters into, at least when expressed in unambiguous terms; and in the absence of any showing to the contrary, he is presumed to have read what he has signed.

*Mortgaged property: Value: Extent of incumbrances: Notice to agent: Waiver.* Under such a policy and such a by-law, where the application fails to state the value of the property insured, and in the absence of any proof of knowledge of the value by the company or its agent, actual knowledge by an agent of the company of the exact amount of the incumbrances would not operate as a waiver of the by-law; and, moreover, the evidence in this case falls short of proving such knowledge.

*Insurance: Values: Extent of mortgages: By laws.* Under the charter and by-laws in question in this case, it was unnecessary for the company to enter upon the inquiry as to the value of the property, as the insured himself takes the risk of ascertaining whether his property is mortgaged so as to violate the by-laws; and where he decides the question for himself by signing the application, he does so at his own peril, and the company may assume that the property is worth twice the amount of all mortgages upon it.

*Application: Warranty.* And the presentation of the application and the acceptance of the insurance, in view of the charter and by-laws, amounted at least to a warranty by the assured that the property was not mortgaged to half its value, etc.

*Application: Amount of mortgages: Value: Materiality to the risk.* The application, being, under the by-laws and in connection with the policy, a part of the contract and a warranty of the truth of the facts stated in it, and inasmuch as it contains an agreement to be bound by the charter and by-laws, and a declaration that the applicant has withheld no circumstance affecting the risk, is an agreement in effect that the question, whether the property is mortgaged in excess of the by-law on that subject, is one material to the risk; and where no information has been given to the company or its agent, by the application or otherwise, of the value of the property, or its comparative value in reference to the mortgages upon it, the fact of its being mortgaged in excess of the by-law renders the policy void.

*Heard October 8 and 9. Decided January 7.*

Error to St. Joseph Circuit.

*O. J. Fast* and *H. H. Riley,* for plaintiff in error.

*John B. Shipman,* for defendant in error.

CHRISTIANCY, J.

Plaintiff in error brought his action against the insurance company in the circuit court for the county of St. Joseph upon a policy of insurance issued to him January 3d, 1870, insuring him against loss by fire to the amount of four thousand dollars upon his wooden hotel building, known as "The Western Hotel," in the village of Mendon, in said county, and to the amount of one thousand dollars on the furniture therein.

The company was a mutual insurance company, authorized to insure property only of its members, and this only when situate in the county of St. Joseph.

The facts admitted in the case on the trial are these: The building and furniture were lost by fire, and proof of loss made in due form. The one thousand dollars insurance on the furniture was paid under a stipulation that it should in no way affect this suit, as to insurance on the building, and it is the latter only which is in controversy.

The policy was issued upon a written application, signed by plaintiff, containing the charter and by-laws of the company, which were also contained in the policy. The policy commences: "Be it hereby known that George W. Van Buren, resident of the village of Mendon, St. Joseph county, state of Michigan, has, this 3d day of January, A. D. 1870, become a member of the St. Joseph County Village Fire Insurance Company, according to the provisions of its charter and by-laws, and insured in said company against loss by fire on the following described village property, situate" (describing its locality):

"On wood hotel building known as Western Hotel__$4,000
On furniture therein_____ 1,000

"Four thousand dollars of the above insurance is for the benefit of A. Wakeman, as security for payment of a certain mortgage held by him on said building for said amount." Then, after describing situation of the building with reference to others, it proceeds: "And the said

company hereby agrees that it shall be held responsible to make good to the insured, his heirs, etc., all such loss or damage by fire, from the date hereof, as specified in the charter and by-laws herein given; provided that the said party herein insured shall pay his or her proportion of all assessments to which this company are liable." Then, after a clause against liability for loss by riot, insurrection, or war, the policy is signed by the president and secretary, with a memorandum at the foot referring to the application on file.

The charter and by-laws, so far as material to be noticed here, are as follows:

CHARTER: By *section 3* the officers are required to be a president, secretary, treasurer, and six directors, who should be resident citizens of the county.

*Section 4* prescribes certain duties of the officers, among which, it is provided: "The secretary shall keep all the books and accounts of said company, and issue all policies of insurance, and act as general agent during his term of office. He may appoint sub-agents, being himself responsible for their fidelity."

*Section 5* gives the directors full power to make by-laws, to make all assessments in case of fire or other indebtedness, etc., and the president, secretary, and treasurer, to be *ex officio* members of the board.

*Section 12:* "All members shall enter into a written agreement, as prescribed by law, and subscribe their names to a copy of this charter, and comply with and observe the by-laws, rules, and regulations. Any member may withdraw at any time by giving the secretary notice in writing of his or her intention, and paying him fifty cents; also paying him his or her proportion of all assessments to which this company shall be liable at the time of his or her withdrawal. No policy shall be written on property outside of the county of St. Joseph."

*Section 17* provides that the company will pay three-

fourths of the value of the property insured at the time of the burning, if insured to that amount, but not more than such three-fourths of the value, though insured for more; the value to be determined by the board of directors.

*Section 27:* "The insurance of any member shall cease upon the sale of his or her property insured; but they shall be holden for all assessments, until his or her policy shall have been withdrawn."

*Section 29:* "This charter may be amended or altered at any meeting of the members by a two-thirds vote of all members present, filing such amendment or alteration in the office of the secretary of state, and obtaining the approval of the attorney general."

BY-LAWS:—*No. 12:* "The application for insurance shall be signed by the applicant, which shall make a part of the contract of insurance, and is a warranty of the truth of all facts stated therein, and shall be filed in the office of the secretary."

*No. 13* relates to making statement and proof of loss.

*No. 16:* "Property mortgaged to an amount equal to, or exceeding one-half its cash value, will not be insured; and any policy issued or existing on property thus mortgaged shall be null and void; and property mortgaged at all, will not be insured to an amount so that the amount of the insurance and the amount of the mortgage together shall exceed three-fourths of its cash value."

The application in this case is declared upon its face to be made "according to the terms of the charter and by-laws of said company;" and these being contained in the application, it is admitted the signature to the application was a subscription to the charter and to the agreement required by the 12th section of the charter. This application, after describing the property to be insured, consists of answers to printed questions, and so far as it relates to the question of incumbrances, is as follows:

"*First.* Are you the owner of the buildings to be

insured, and of the land upon which they are situated? Answer: Yes, $4,000 to be held by A. Wakeman as collateral security for payment of a certain mortgage.

"*Second.* Do you own the personal property to be insured? Answer: Yes.

"*Third.* What incumbrance is there on the property to be insured? Answer: Four thousand dollars."

The application closes with the following declaration: "I hereby declare that the above questions are correctly answered, and that I have not withheld any circumstance, or information or rumor in any manner concerning the above enumerated property affecting the risk on the same."

In fact, the real estate, including the building, was at the time incumbered by two mortgages executed by the plaintiff and his wife to said Wakeman in the aggregate sum of six thousand fifty-three dollars and ninety-seven cents, with interest, and at the time of the loss amounted to six thousand eight hundred and sixty-two dollars.

The value of the real estate mortgaged, it is admitted, did not, at the time of the insurance, exceed nine thousand four hundred dollars.

The property was therefore mortgaged in excess of half its value by one thousand three hundred and fifty-three dollars and ninety-seven cents; and as the sum insured, four thousand dollars, together with .the mortgages, which were six thousand fifty-three dollars and ninety-seven cents, amounted together to more than the whole value of the property, when by the by-law it could not exceed three-fourths the value, the company insist that there was a clear violation by the plaintiff of both branches of the by-law, and that the insurance was utterly void.

It is admitted that none of the directors had any actual knowledge of the amount of the incumbrances except what appears upon the application; but the plaintiff had paid two assessments for losses, and he claims that Reed, who is admitted to have been "an agent of the secretary of said company," and who made out and forwarded the applica-

tion to the secretary, and is claimed to have been an agent of the company, had notice of the amount of the incumbrances. The evidence upon this point, which was the only matter of fact not agreed upon, will be noticed in its proper place.

But in answer to the objection that the insurance is void by reason of its violating the by-law, the plaintiff's counsel insisted in the court below (as he insists here), and asked the court to charge, that as the insurance was for the benefit of Wakeman, the mortgagee, and so mentioned in the application and policy, by-law number 16 had no application to it, and the suit being brought for the benefit of Wakeman, there was no violation of this by-law, and that the plaintiff is entitled to recover. This request was refused, the court holding the policy void.

Now, if this policy constituted a contract between the mortgagee and the insurance company, and the insurance was of his interest as mortgagee, and not that of the plaintiff as owner, there might be good ground for holding that it did not come within the mischief intended to be guarded against by the by-law in question. At least there might be good ground for contending in such a case that no benefit could legally have accrued to the plaintiff from any payment to be made for any loss which might accrue, unless there was some agreement between the plaintiff and his mortgagee that such payment should operate in reduction of his mortgage.—See *Ellis on Ins., 162, and cases cited; White v. Brown, 2 Cush., 412; King v. State Mutual Ins. Co., 7 Cush., 1.*

But this policy creates no contract relation between the insurance company and the mortgagee. It is a contract only between the company and the plaintiff himself. It is the plaintiff's interest, and not that of the mortgagee, which is insured. It was his loss or damage, and not that of the mortgagee, which the company agreed to pay. And though the insurance is declared to be for the benefit of the mortgagee "as security for his mortgages," the mortgages were

executed by the plaintiff, and he owed the mortgage debt the insurance was to secure. The payment, therefore, for any loss, when made, though paid to the mortgagee, would inure directly to the benefit of the plaintiff, and in legal effect would just as clearly constitute a payment to the plaintiff, as if made directly to himself; the mortgagee was but the appointee to receive the payment for him; and though it should be applied in reduction of the mortgages it would still have been as the plaintiff's money and applied to his use. This provision of the policy amounts only to a request or assent to the company to pay it for him and to his use, to the mortgagee. The right of action is vested in him, and he brings it, and whatever will defeat his right of recovery must of necessity defeat any right of the mortgagee, which, in this case can only be derived through him.—*Grosvenor v. Atlantic Fire Ins. Co., 17 N. Y., 391; Bidwell v. N. W. Ins. Co., 19 N. Y., 179; Macomber v. Cambridge Mutual Fire Ins. Co., 8 Cush., 133; Carpenter v. Providence Washington Ins. Co., 16 Pet., 495; Foster v. Equitable Fire Ins. Co., 2 Gray, 216; Bowditch Mutual Fire Ins. Co. v. Winslow, 3 Gray, 415; Hale v. Mechanics' Mutual Fire Ins. Co., 6 Gray, 169.*

The plaintiff therefore had not only the same legal, but the same real and beneficial interest in the insurance, and the amount to be recovered for a loss, as if the mortgagee had not been named in the policy. And if, as urged by the plaintiff's counsel, and as we think correctly, the main, if not the only object of the by-law, was to avoid the temptation to the insured to burn the building which might be furnished by allowing a party to insure property thus mortgaged, when the loss is payable directly to himself, we are unable to see why the same reason does not apply with equal force, and equally affect the risk, in a case like this, where it is to be paid to another for his benefit.

Upon every view we have been able to take of this question we think the court was right in refusing the charge requested, and that the property being mortgaged to more

than half its value, etc., the insurance comes directly within the very reason and purpose of the prohibition of the by-law, and directly violates its letter and spirit; and unless the by-law can be held to have been waived, or defendant is estopped from setting it up, on the ground claimed by the plaintiff, the insurance must be held void.

Do the facts of the case constitute such a waiver or estoppel, or rather was the evidence such, including the admitted facts, that the jury under proper instructions, would have been authorized thus to find?

The only evidence not consisting of facts admitted and above stated, is the testimony of George B. Reed, who says, "I took the application for Mr. Van Buren, the plaintiff. He came to my office and said he wanted to make application for insurance in the village company. He said he wanted five thousand dollars, or more if he could get it. I told him five thousand dollars was all he could get in the company. He said he wanted four thousand dollars to be held as collateral security for Mr. Wakeman. I don't know whether he said 'for,' or 'by,' Mr. Wakeman; but he wanted to secure Mr. Wakeman four thousand dollars, for a mortgage he held against the property. I don't remember whether he told me the amount of the mortgage or not, Mr. Wakeman held against him, but I think he told me it was more than the amount of four thousand dollars. I took the application for the company and took my fees, and sent the application to the office at Centreville, and they issued the policies. I did not issue the policies. I was told to do this kind of business by Mr. Mason, who was then the secretary of the company."

Being asked what knowledge he had at the date of the application, of the amount of the mortgage upon the property, he answers: "I don't know that I had any knowledge of the amount; but I have stated that Mr. Van Buren told me the amount was more than four thousand dollars." If there was any conversation about the insurable condition of the property, he does not recollect it.

On cross-examination, being asked if he put to Van Buren this question contained in the application, "What incumbrance is there on the property to be insured?" he answers, "I don't remember, but presume I did."

*Question.*—"Did you write the answer to it as he stated it?" *Ans.*—"I presume I did; I usually asked that question of applicants, and wrote down the answer as they gave it. I don't remember in this case, but presume I wrote Mr. Van Buren's answer as he stated it."

*Question.*—"What was said between you and Mr. Van Buren as to what you were to do with the application?" *Ans.*—"I don't remember what was said about it, but I took the application to be forwarded for a policy. He said he wanted to be insured one thousand dollars on the furniture and four thousand dollars on the building."

*Question.*—"Did he state any definite amount that the premises were mortgaged for above the four thousand dollars?" *Ans.*—"I don't think he did."

Now, so far as Reed's knowledge or notice of the amount of the incumbrances was material, if at all, it rested upon the plaintiff affirmatively to prove it; and whatever else may be said of this testimony, we think it stops short of any fair tendency to show that Reed at the time had knowledge or notice of the actual amount of the mortgages. But we shall not discuss this particular question, as we do not think it material. Nor do we deem it necessary to decide in the present case, whether Reed was properly an agent of the company, or only an agent of the secretary.

There are many cases in which insurance companies are very properly held bound by the knowledge, acts, assurances and representations of their agents, beyond and even contrary to some of the particular provisions of their policies; and this court has upon several occasions so held. The extent to which, and the instances in which, they should be so held may depend somewhat upon the character of the company itself, whether a stock company insuring

parties who are not members, or a mutual company insuring members only, and much upon the nature of the charter and by-laws, and how far the latter are made parts of the contract of insurance, as well as upon the general plan or principles upon which the business is conducted, the nature of the applications made for insurance, and how far these are made a part of the policy, or agreed to be treated as warranties, or only as representations; and perhaps still more upon the nature of the subject matter or particular features of the contract to which the question relates. And in what pertains to the matter of routine, the mode of filling up papers, the meaning the company attaches to certain special questions, or special and peculiar provisions, or the proper form of answers to the questions in an application, and other matters not obvious to the generality of men, and only supposed to be fully or fairly understood by insurers, or their agents, or those familiar with that kind of business, in short, by experts, it is right, and has been found necessary, in order to prevent fraud and imposition, to hold the insurers to a pretty strict liability for the acts, knowledge and representations of their agents. But on the other hand, insurance, being indispensable to the business interests of the country, and beneficial to all classes, is to be properly protected; and this can only be done by applying principles which shall be just and safe for the insurers as well as the insured. And for this purpose the person applying for insurance, and entering into a contract with that view, must be presumed to know something, to be competent to contract, and therefore to understand the general nature and fundamental principles of the contract into which he enters, especially when these are expressed in unambiguous terms, and unless some imposition or deception has been practiced to prevent it; and if it is not shown that he is incapable of reading, he must be presumed to to have read the paper he has signed. We do not propose to discuss these matters in detail or in their application to any other case than that before us.

This case stands upon its own peculiar grounds, and does not, as we conceive, present the question in any of its forms, of the liability of the company for the acts, representations or assurances of its agent.

Admitting Reed to have been an agent of the company, instead of the agent merely of the secretary, we do not think his actual knowledge of the exact amount of the incumbrances would have operated in this case as a waiver by the company of the by-law, or in any manner have affected them; nor would they be affected by the fact that plaintiff had, before his loss occurred, paid assessments to the company on account of other losses.

There is certainly no evidence in the case tending to show that either Reed or the company, or any officer of the company, ever, prior to this loss, had any knowledge or notice of the value of the property, or of the fact that the mortgages upon it exceeded half its value, or that the amount of the mortgages, when added to the sum insured, exceeded three-fourths of its value. There is no evidence that Reed had seen or knew the property, or that a word was said about its value. The application, which consists mainly of printed questions and written answers, neither asks nor answers any question upon the point. And under the charter and by-laws of this company, of which the plaintiff, with all others insuring in it, became a member, and to which he and they assented as the law of their association and a fundamental principle of the contract of insurance, it was unnecessary for the company to enter upon this inquiry. Every one applying for and receiving insurance was himself, by this fundamental article of his own agreement, bound to know whether the property he was getting insured was mortgaged to more than half its value, etc., and that if so mortgaged he had no right to have it insured in the company, and solemnly pledged himself that it should not be, and that the insurance would be void, and could not be held valid, without allowing him, in violation of his agreement with them, to commit a legal fraud

28 MICH.—52.

upon his associates, by compelling them to assume a risk in his behalf which he, as a condition of membership, and by the act of becoming a member, had agreed they should not assume. He was bound to know that the obligation of ascertaining whether the property was thus mortgaged did not rest upon the company, but that he must decide it for himself at his own peril (at least unless he informed them of the exact amount of the incumbrances, and of his own estimate of the value, and asked them to determine its value, and they should do so for themselves.)

The mere fact of his signing the application under this by-law gave the company the right to assume that the property was worth twice the amount of all mortgages upon it.

But there is still a further, but analogous ground upon which the plaintiff must fail. The presentation of the application, and the acceptance of the insurance by him, in view of the charter and by-laws, amounted at least to a warranty that it was not mortgaged to half its value, etc. And further still, in agreeing to the charter and this by-law, he had also agreed that this fact was material to the risk. By by-law No. 12, in connection with the policy, the application became a part of the contract of insurance, and a warranty of the truth of the facts stated in it; and in his application he declares that he has withheld no circumstance affecting the risk on the property, while it is not pretended that by that application or otherwise he had informed the company, or even its agent, of the value of the property, or its comparative value in reference to the mortgages upon it, or that he was applying for insurance in direct violation of the by-law.

The charge of the court, holding the insurance void, was correct, and the judgment must be affirmed, with costs.

The other Justices concurred.