RICHARD BAYLIS v. WALTER M. CRONKITE AND RODERICK
D. FOOTE.

*Conversion—Measure of damages—Entry of final judgment.*

An agreement was made between A and B by which B was to sow
A's land and harvest and haul to market such part of the pro-
duce as A should direct, and as to a crop already planted B
agreed to "put the product in market" and was to receive half
the proceeds when it should be sold. It was also provided that
neither should dispose of undivided common property without
the other's consent. *Held* that the contract required B to deliver
the wheat in market, but did not give him any authority to sell it,
and that any attempt to dispose of it by sale or by storing it
in a third person's granary was a conversion. The case was
not one of leasing on shares with the rights usually belonging
to such an arrangement.

In an action for the conversion of certain wheat by one of the par-
ties to a contract under which the proceeds of its sale were to
be shared, evidence that the barn containing the rest of the
wheat had been burned and the other party had received the
insurance would be inadmissible to show an offset or by way of
defense.

Where one of the parties to a contract converts property the pro-
ceeds of which were to have been shared equally with the other,
the latter is entitled to recover one-half the market price at the
time and place of conversion.

Final judgment cannot be entered by the Supreme Court in an action
for conversion where there is no means of knowing how the jury
made up their verdict.

Error to Clinton.    Submitted Oct. 11.    Decided Oct. 22.

TROVER.    Plaintiff brings error.

*Randolph Strickland* for plaintiff in error.    A contract
is to be construed as a whole, *Norris v. Showerman*, Walk.
Ch., 206 : 2 Doug. (Mich.), 16; *Bird v. Hamilton*, Walk.
Ch., 361; *Paddack v. Pardee*, 1 Mich., 421; *Bell v. Utley*,
17 Mich., 510.

*H. & H. E. Walbridge* for defendants in error.

MARSTON, J. Plaintiff brought trover for the conversion of certain wheat. April 12th, 1876, plaintiff and defendant Cronkite entered into a written agreement in reference to the cultivation by Cronkite of a certain farm then owned by plaintiff. This agreement was to continue in force until April, 1879, and under it, amongst other things, Cronkite was to properly cultivate the soil of all the cleared land, and "sow, harvest, thresh and haul to market such part of the roots, hay, seeds and grain, as shall be raised on the farm of the party of the first part, as such party may from time to time direct." It was also provided that neither party should be allowed to dispose of any undivided property owned in common by them without the consent of the other being first obtained.

In this case the controversy arises on account of the disposition made by defendants of certain wheat, contrary, it is claimed, to the following provisions of the agreement:

"There now being forty acres of wheat on the ground on said farm, the party of the second part (Cronkite) shall, and he hereby agrees to harvest, thresh, and put the product thereof in market, and pay the party of the first part for one-half of the cost of the seed sown for said wheat, amounting to $40.50, and shall leave on the ground sown, in the same condition, an equal number of acres when his term under this agreement shall expire, for the use and benefit of the party of the first part. As compensation for the harvesting, threshing and marketing said wheat as aforesaid, the party of the second part shall be entitled to, and have, an equal one-half part of all the proceeds of said wheat now on the ground aforesaid, when the same shall be sold."

The plaintiff remained in possession of the farm. The wheat grown upon this forty acres was harvested and threshed. It appeared that the plaintiff was at home when the threshing commenced, and until nearly its completion. That after he went away defendants commenced drawing the wheat away from the machine as the same was threshed, and also taking some from the granary where it had been put the day previous.

A portion was taken to the granary of defendant Foote and a portion of it to market and sold. There was evidence tending to show that defendants were told, when taking the wheat away, that they had no right so to do under the contract without the knowledge or consent of plaintiff; that Cronkite replied that he was not going by the contract any more, that if plaintiff was there he (Cronkite) would not be permitted to take the wheat, and that he was going to take it while the plaintiff was away.

The court charged the jury in substance that Cronkite was to harvest the forty acres of wheat, thresh it and put the product thereof in market, and that he had control of the wheat for such purposes; that he was the judge as to the proper time of harvesting, threshing and marketing; that he might store the wheat where he pleased, and draw it to what market he pleased; that while the intention of the parties may have been that it should be stored on the farm, yet such would not be binding upon Mr. Cronkite; that he (Cronkite) had a right to manage the harvesting, threshing and marketing in his own way, liable however for bad management, and that aside from being responsible in damages for bad management, he had perfect and complete control without any interference or hindrance from the plaintiff.

We need not determine whether Cronkite had full control and the right to manage the harvesting and threshing in his own way, as charged by the court, because such questions do not arise in this case. We are clearly of opinion that in so far as the court charged the jury that Cronkite had the right to store and sell the wheat when and where he pleased, without interference or hindrance from plaintiff, there was error. We think this clause of the contract, either standing alone or viewed in connection with the other provisions, indicates and expresses clearly a contrary intention. The

fair interpretation of this contract required Cronkite to deliver the wheat in market, but he had no authority to sell the same, and any attempt on his part to dispose of it, either by storing it in the granary of a third party or by a sale thereof, without the consent of Mr. Baylis, would be a conversion thereof. Indeed the contract in its several provisions seems to have been carefully drawn so as to give Mr. Baylis control of the sale of the products of the farm. It was not a case of leasing upon shares, with the rights usually pertaining thereto, and the contract will not bear such a construction.

Evidence was introduced on the part of defendants that the wheat not taken away was destroyed by fire Aug. 21, 1876, plaintiff's barn having been burned on that day; that the barn and wheat therein were insured, and that plaintiff received the insurance on the same. We are at a loss to discover how this evidence in this action could have been admissible for any purpose,—certainly not as an offset, nor for the purpose of showing that plaintiff had in this way received one half the proceeds of the entire crop of wheat, as such would not be a defense in this action. See *Perrott v. Shearer*, 17 Mich., 54.

As the plaintiff under the contract was entitled to one half the proceeds of the wheat, and the defendant Cronkite to the other half, the plaintiff can in this case recover but one half the market price at the time and place of the conversion. In case he were permitted to recover the full value, the defendant Cronkite would at once have a cause of action against him to recover back one half the amount thereof.

We cannot, as plaintiff insists, enter a final judgment in this court in his behalf. *Johnson v. Ballou*, 28 Mich., 398.

The judgment must be reversed and a new trial ordered.

The other Justices concurred.