## WOOD v. VROMAN.

1. APPEAL AND ERROR—DIRECTED VERDICT.
    In disposing of an assignment of error based upon the refusal of the trial judge to direct a verdict for defendant, the Supreme Court must consider the evidence in the light most favorable to plaintiff's claim.

On failure of physician or surgeon to follow established practice as to method of treatment, see notes in 37 L. R. A. 836; L. R. A. 1915C, 595.

On degree of skill and care required of a specialist, see note in 20 L. R. A. (N. S.) 1030.

215—Mich.—29.

2. MEDICINE AND SURGERY—MALPRACTICE—EVIDENCE—IDENTITY.

In an action for malpractice resulting in plaintiff's losing the sight of the eye treated by defendant, claimed to have been caused by the latter's brushing pus from a pustule on the lower eyelid into a fresh wound in the eyeball from which he had removed a small piece of steel, refusal of the trial judge to strike out testimony of another physician that he found germs on an analysis of the discharge from the eye, objected to on the ground of lack of identity when it developed on cross-examination that he could not recall whether he took the sample from the eye, *held*, not error, where another physician, who also treated plaintiff, testified that he had witness make an analysis of the pus from plaintiff's eye and was advised of the results.

3. SAME—EVIDENCE—PROOFS REQUIRED—INFERENCES.

Plaintiff was not required to prove to an absolute certainty that the infection in the eye was caused by the introduction of pus as claimed by him; establishment of facts from which such inference might fairly be drawn being sufficient.

4. SAME—DEFENSES.

That the infection might have been due to another cause was a matter of defense.

5. SAME—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY.

Plaintiff's proofs *held*, sufficient to justify submission to the jury of the questions whether the loss of plaintiff's eye was due to the action of the defendant in wiping the pus into the fresh wound on the eye, and if so, whether such action was malpractice on his part.

6. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—RIGHT OF INJURED SERVANT TO SUE THIRD PARTY—ABATEMENT OF ACTION.

Whether an injured employee's right of action against some person other than the employer to recover damages by reason of his injury will abate on his filing a claim under the workmen's compensation act, is dependent upon the applicability of the statute and his right to enforce compensation thereunder.

7. SAME—CONTRACTS.

. Liability under the workmen's compensation act rests solely upon contract.

8. NEGLIGENCE—DAMAGES—TORT.

Money received under a contract may not be considered in a suit for damages for a tortious injury though it may have afforded compensation for the loss sustained.

9. MEDICINE AND SURGERY—MALPRACTICE—ESTOPPEL—PARTIES.

Although plaintiff received compensation from his employer's insurer on the theory that the loss of his eye was occasioned by an injury received while at work, he is not estopped from maintaining this action on the ground that the loss was occasioned by defendant's negligently brushing pus into the wound in the eye in treating a pustule on the lower eyelid after he had successfully removed the piece of steel from the eye, since estoppel is binding only on the parties to a transaction or their privies.

10. MASTER AND SERVANT—LIABILITY OF EMPLOYER FOR RESULTS OF MALPRACTICE LIMITED TO TREATMENT OF ORIGINAL INJURY.

Even though it be conceded that the employer is liable for resultant injuries, including malpractice, he would not be liable for the results of malpractice in treating an injury not rendered necessary by the original injury for which he was liable.

11. MEDICINE AND SURGERY—COMPENSATION ILLEGALLY RECEIVED NOT TO BE CONSIDERED IN TORT ACTION.

That plaintiff recovered compensation from his employer's insurer to which he was not in law entitled, could not be considered by the jury in its award of damages.

12. SAME—MALPRACTICE—DAMAGES—DEFENSES.

If defendant was guilty of the tort complained of, he may not relieve himself from liability by showing that plaintiff had received compensation on account thereof from any other source except through payment by a joint tort feasor.

13. SAME—SPECIALISTS—DEGREE OF SKILL REQUIRED.

Defendant, holding himself out as an eye specialist, was obligated to bring to the discharge of his duty in treating an injured eye that degree of skill and knowledge possessed by physicians who are specialists in the light of present day scientific knowledge.

14. SAME—EVIDENCE—ADMISSIBILITY.

While it was proper to allow another eye specialist to testify as to whether the treatment prescribed by defendant

evidenced the exercise of proper skill and knowledge as a specialist, it was error to allow him to state the treatment he would have used.

15. SAME—TRIAL—INSTRUCTIONS—REQUESTED INSTRUCTION.
In view of the fact that a witness had been permitted to testify that he would have prescribed a different treatment for the eye than that used by defendant, it was error for the court to refuse a requested instruction that plaintiff could not recover if defendant was guilty of negligence other than that charged, and that plaintiff must prove negligence in the respect charged, although in the general charge the jury were instructed that, to find for the plaintiff, they must be convinced from the proofs "that the infection complained of was thus caused solely by the negligent act" of defendant.

16. SAME.
The court was also in error in refusing a requested instruction that there must be a preponderance of the proofs supporting the particular act of negligence charged, in order for plaintiff to recover.

17. SAME—ADMISSIONS—EVIDENCE—INSTRUCTIONS.
Where, nearly three months after this action was begun, plaintiff wrote a letter in the nature of an affidavit to the industrial accident board claiming that the loss of his eye was due to the injury received while at work, which is inconsistent with the claim made in this action, defendant was entitled, on request, to an instruction to the jury, that it might be considered by them as an admission on his part as to the cause of his injury.

Error to St. Clair; Tappan (Harvey), J. Submitted April 13, 1921. (Docket No. 84.) Decided October 3, 1921. Rehearing denied December 22, 1921.

Case by Peter M. Wood against Mason E. Vroman for malpractice. Judgment for plaintiff. Defendant brings error. Reversed.

*Moore & Wilson* and *Lincoln Avery* (*Lodge & Brown,* of counsel), for appellant.

*John B. McIlwain,* for appellee.

SHARPE, J.   The plaintiff, in 1916, was an employee in an automobile repair shop operated by Beard, Campbell & Company at Port Huron.   He had at that time but little sight in his left eye, owing to an injury theretofore received.   On July 31st, while testing ignition, some particles of dust and a piece of steel were blown into his right eye.   He tried to remove them with a handkerchief he carried in the hip pocket of his one-piece suit, but did not wholly succeed.   A similar, but unsuccessful, effort was made by a fellow workman named McLeod.   Plaintiff testified that no tears formed in his eye as a result thereof, just a scratching sensation;

"it did not bother me to speak of at all; didn't pain nor cause any tears to come to speak of, no tears running out of my eyes or down my cheeks; I had no idea there was anything wrong with my eye that afternoon; I didn't know there was anything in my eye; I didn't know what made it scratch though."

About five hours after, he went to see Dr. Fraser, an eye specialist, but did not find him in his office. He had his eye examined by Dr. Heavenrich, a general practitioner, who officed with Dr. Fraser.   It is plaintiff's claim that Dr. Heavenrich told him he could see nothing in the eye, but gave him a wash to use therein. Plaintiff testified:

"The next morning when I went to Dr. Vroman's office I was not suffering pain only just the scratching when I closed my lids."

He further testified that Dr. Vroman, after looking in his eye, said he could "see it" and, with a small instrument, at once removed a particle of steel; that the scratching sensation was then gone; that the doctor then said to him, "You have a bad ulcer there on your eyelid, I guess I better open that;" that he did so and, after rolling some absorbent cotton "into

a little lead pencil like shape," wiped it across his eye, thus putting the pus from the ulcer into that part of the eye from which the steel had been removed; that this caused him great pain, which continued after he went home and resulted in the ultimate loss of the eye a few months thereafter. The defendant denies that he found or opened an ulcer on plaintiff's eyelid, and insists that the loss of plaintiff's eye was due to the infection carried into it by the particles of dust and steel or that reached it from the hands or handkerchiefs of the plaintiff or his fellow workman in their efforts at removal.

The full proceedings relative to the payments received by plaintiff from the insurance company by whom his employer was protected are not in the record, but it appears that he has been paid $990 on account of his injury and a tender was made to him of $10, making full payment of compensation, at the rate agreed upon of $10 per week, for the loss of an eye. In a receipt dated September 21, 1916, plaintiff acknowledged receipt of $10—

"on account of injuries suffered by me, on or about the 31st day of July, 1916, while in the employment of said employer."

The record also contains a compensation agreement entered into between plaintiff and the Travellers' Insurance Company, under which plaintiff was to receive compensation "at the rate of $10 per week during the period of disability," the injury being described thus:

"While employed in his usual duties injured received several pieces of steel in the right eye causing severe inflammation and irritation of the right eye."

After receiving $990 and refusing to accept a further proffered payment of $10, plaintiff began this suit against Dr. Vroman, claiming damages for his

unskillful conduct in wiping the pus from the ulcer over the "fresh wound" in his eye thereby infecting it and causing the blindness which followed. This suit was begun on July 29, 1918, three days before the right of action therefor would have been barred by the statute of limitations.

On October 23, 1918, nearly three months thereafter, the plaintiff wrote the following letter:

"To the Industrial Accident Board,
    "Lansing, Mich.
    "*Gentlemen:*—In my own behalf I beg to offer as evidence in the closing of my case, Peter M. Wood *v.* Beard, Campbell & Co., the deposition of myself as taken by Ben Shepard is true as far as it goes, but it represents their side of the case, and I wish a fair trial as intended by our State Legislature, when the Workingmen's Compensation Law was enacted. First, as I will prove later on the law intended to compensate for injury in proportion to the permanency of the disability to earn his weekly wage. Total disability resulting from an injury was to be compensated with not to exceed ten dollars per week for not to exceed four hundred weeks.

"If a man lost a leg and died as the result of the loss of the leg, he would receive compensation for death. If a man lost a hand and died from the results of the loss of that hand, he again would receive compensation for death and not just the loss of the hand. If a man received an injury to his eye and as a result an affection of the brain caused death which resulted from the injury to the eye, he would again receive compensation for death and not merely for the loss of the eye. That is to say, from the wording of the compensation law it is very evident that the intent of the law was to compensate for the resultant effects of such injury received. As the result of the injury I received to my eye I am totally disabled and therefore come under section nine of the compensation law.

"In the Weaver *v.* Maxwell case the Travellers take it upon themselves to seek protection for the employer by a clever interpretation of the question as to what degree the first employer was responsible for the total

injury to Mr. Weaver, and by a simple mathematical calculation they subtracted one eye from the first employer and left one for the other employer to be responsible for. One little fact they forgot to do was to take consideration of the fact that one eye was worth one thousand dollars by the wording of the law and two eyes are worth four thousand dollars. Now we will carry out the calculation which the Travellers started but apparently chose to neglect to work out to a finish and prove. By subtracting the value of one eye, or one thousand dollars, from the value of two eyes or four thousand dollars, we have remaining a result amounting to three thousand dollars. This is not a bit unfair, as it is an undisputed fact that the loss of the remaining eye is of infinitely more harm of loss than the first eye. Again, I say I am asking for compensation for total disability which resulted from the loss of my right eye and the remaining sight of my left eye. The Travellers drew a parallel with the Weaver case and try to forget that a man was totally disabled by the last accident which resulted in total blindness.

"It may appear evident from the closing questions of my deposition that I now have as much sight in my right eye as I had in the left previous to my last injury; but that is merely the result of a lack of information, as in fact, to be more explicit, I cannot see even the largest objects unless between me and the light. A hand may be passed so close to my face as to touch me and yet but for my sense of hearing I would not be aware of it.

"It is evident that the compensation law was evolved for just such a case as mine, because as is evident in my case the employer is trying to avoid the payment of a just claim. The Travellers will no doubt again claim that they are only seeking justice; but in as much as one thousand dollars for one eye was the stipulated amount and four thousand dollars was also the stipulated amount for two eyes then who should receive the remaining two thousand dollars as calculated by the attorneys during the Maxwell case. For the law was undoubtedly very plain as to its intentions. Apparently this phase of the case has not been brought to the notice of the Supreme Court. Beyond

a doubt four thousand dollars is the sum stipulated for total disability, and I am disabled as all reports show. I have already received one thousand dollars and I am now petitioning that the Industrial Accident Board find me worthy of at least two thousand dollars more according to the disability clause, section nine, of the compensation law.

"Perhaps more evidence of my disability is necessary. During the time I was in the employ of Beard, Campbell & Company I received twenty dollars per week, and had three distinct offers of thirty dollars per week to go elsewhere. This shows my earning ability at the time of my injury, and I could now secure a position paying me the same or better wages if I could see enough to get around without aid from others. This then is my ability. Now as the result of my eyesight I cannot get a job at any price. The Examining Board at Port Huron just told me the other day that I was useless and placed me in class five. What is the cause of this difference in ability? Just the result of the loss of my eyesight at Beard, Campbell & Co. for which the Travellers are claiming to have fully paid me according to law.

"In the Maxwell v. Weaver case decision the way was left clearly open to my case in its most prominent point, towit: If a man lost only one eye he could receive compensation for one eye or the amount of one hundred weeks, but if he suffered any further loss he should receive in proportion. I lost the sight which I enjoyed in both eyes and most all of my entire ability to earn my living for myself and family, and I emphatically demand that I be accorded the compensation according to article nine of the compensation law.

> "Respectfully yours,
> "PETER M. WOOD.

"State of Michigan, }
"St. Clair County,  } ss.

"Peter Wood being duly sworn deposes and says, that the statement to which this notary is attached is a true statement of the facts as they are in every detail.

> "PETER M. WOOD.

"Subscribed and sworn to before me this 23rd day of October, A. D. 1918.

"FRANK B. HAYWARD.
"Notary Public in and for St. Clair County, Michigan.
"My commission expires December 4th, 1918."

At the conclusion of the proofs the defendant moved for a directed verdict for the following reasons:

(1) No proof of defendant's negligence.
(2) No expert proof that the loss of plaintiff's eye was probably due to any act of defendant.
(3) Plaintiff received compensation for the loss of his eye under the workingmen's compensation act.
(4) Jury should not be permitted to speculate or conjecture on the cause of the loss of plaintiff's eye.
(5) No competent proof that defendant wiped pus across an existing opening or wound in plaintiff's eye.

This motion was denied. The case was submitted to the jury, who found for the plaintiff in the sum of $12,000. The defendant here reviews the judgment entered thereon by writ of error. We will consider the assignments under the headings and in the order discussed by defendant's counsel in their brief.

1. Refusal to direct a verdict.

(a) Was there proof of malpractice? Counsel contend that to justify submission to the jury on such a charge there must be competent evidence of sufficient lay facts upon which to base expert testimony, followed by such expert testimony tending to show that defendant was guilty of improper practice and that plaintiff's injury resulted therefrom. In disposing of this assignment, we must consider the proofs submitted in the light most favorable to plaintiff's claim. We have already referred to the testimony of the plaintiff as to what occurred in the defendant's office when the piece of steel was removed and, as he claims, the ulcer was opened and the pus therefrom drawn across his eye. In addition thereto,

he testified that when the steel was removed the defendant asked, "How does that feel?" and he said, "That feels fine." That immediately following the wiping of the pus across his eye he felt a burning sensation and said, "What the dickens did you do, Doctor, that burns like pepper?" That he was unable to continue at his work because of the tears in his eyes; that his right eye continued to smart and burn until he went home at night; that he suffered during the night and the next morning, being unable to see the defendant, he called on Dr. Fraser, another eye specialist in Port Huron. Dr. Fraser testified that he found the eye—

"greatly inflamed; the sclera or white part of the eye was engorged badly and there was a great deal of congestion or swelling in the membrane lining the lids, and the patient was complaining of a great deal of pain."

He applied an antiseptic solution. The next day he again examined the eye and thought there was no possibility of saving its sight. He was asked and, over the objection of defendant's counsel, answered as follows:

"*Q.* If about half past ten o'clock on the morning of the first, pus from an open pustule on the eyelid had been allowed to come in contact with a fresh wound on the cornea of the eye, setting up an infection and that infection had not been arrested, would that be sufficient to account for the condition you found Mr. Wood in the next morning on the 2d? * * *
"*A.* I think it would. * * *
"*Q.* Supposing there is a fresh wound on the cornea of the eye and the physician with knowledge of that fact has occasion to open a pustule on the under lid of the eye, from which pus is discharged; what does good practice require, on the part of the physician to see that the pus does not come in contact with the fresh wound? * * *
"*A.* Why in that case the eye should be protected

so that the pus from the pustule that you speak of would not come in contact with any part of the eye and should at once receive a strong antiseptic solution so that infection would not be transferred to any other part of the eye.

"*Q.* Supposing a fresh wound exists on the cornea of the eye from which a piece of steel has just been removed by the physician, and he then opens a pustule on the lower eyelid, which discharges pus, and in order to remove the pus he takes a piece of cotton batting and rubs the pus off across the eyeball and over the fresh wound; what do you say as to that being good or bad practice?   *   *   *

"*A.* We would not consider that good practice."

Counsel insist that there was no evidence of "a fresh wound" in defendant's eye at the time he claims the pus was drawn over it. Plaintiff testified, and there is no dispute about the fact, that the piece of steel had just been removed from the eye. That this would leave a wound is, we think, apparent. We find no testimony in the record to the contrary. Several of the doctors spoke of the place from which the steel was removed as a "wound" and a "wounded spot." There was positive testimony that pus from the ulcer was injected into the eye by the defendant and that pain, tears and redness of the eye followed. Dr. Moffatt was asked what the early symptoms of an infection, so set up, would be and answered, in part, "Pain, an increasing flow of tears, redness in the eye." He also testified:

"I don't know whether or not I took a sample of the discharge; but I received some of the discharge from the eye of which I made an analysis of it and found two germs present in the pus called staphylococci and streptococci of which the streptococci is the more malignant and it might be found in pus from a pustule on·the eyelid."

A motion to strike out this testimony was made after it appeared on his cross-examination that he did

not recall whether he took the sample from the eye. As to this, Dr. Fraser testified:

"I had Dr. Moffatt make an analysis of the pus that was coming from his eye, and subsequently he advised me of what he found."

We think that there was no error in refusing to strike it out for lack of identity. At most it presented a question for the jury.

It is urged that under the evidence the infecting germs may have been introduced into the eye from the dirt blown into it, from the hands or handkerchiefs of the plaintiff or his fellow workman in their efforts to clean it out or in the discharge from the pustule and that the jury should not have been permitted to guess or speculate about it; that the duty devolved on plaintiff to show by a preponderance of the proof that the infection came from the pus in the sty. It was the claim of plaintiff, contradicted it is true by Dr. Heavenrich, that there was no inflammation in the eye, no pain, "only just the scratching when I closed my lids," up to the time of the opening of the ulcer by the defendant. Dr. Moffatt testified:

"It ordinarily takes 12 hours or longer in the case of a well, healthy man for symptoms of an infection of this character to show themselves. * * * The infection would not be likely to manifest itself until about 12 hours later; * * * that under ordinary circumstances that takes about 12 hours time."

He further testified:

"Assuming that up to the period of 20 hours there had been no pain, no increased flowage of tears, no perceptible inflammation or swelling, the probabilities would be that serious infection did not exist."

The plaintiff was not required to prove to an absolute certainty that the infection was caused by the introduction of the germs in the pus. He was required to establish facts from which such an inference

might fairly have been drawn by the jury. That the infection might have been due to another cause was a matter of defense. We cannot say that the proofs left the matter so uncertain as to preclude the submission of the question to the jury. Without quoting or referring to any other evidence, we think this sufficient to justify the submission to the jury of the question whether the loss of plaintiff's eye was due to the action of the defendant in wiping the pus from the ulcer across that part of the eye from which the steel had been removed and whether such action was malpractice on the part of the defendant.

(b) Was plaintiff's claim barred under the workmen's compensation act? Defendant's counsel rely on section 15 of part 3 (2 Comp. Laws 1915, § 5468) which reads as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

They also call attention to the following language of Chief Justice Ostrander in *Brabon* v. *Power Co.,* 201 Mich. 697, at page 703:

"If the employee has the right either to sue his employer at law or to take compensation under the statute, and he sues and later files a claim for compensation, the action at law will abate; because by the terms of section 5488, above quoted, in filing his claim he has released to his employer all demands at law."

The application of the statute and of the rule as stated is made dependent upon the right of the employee to enforce compensation under the act. The argument of counsel on this branch of the case is grounded largely on the claim that plaintiff had such right. To determine this question, we must examine the claim for which he now sues and the evidence offered to support it. The declaration alleges that the operation to remove the particle of steel—

"was quickly and successfully performed, and plaintiff at once became relieved of the pain he had been suffering from it and had the complete and full use of his eye, which otherwise was in a normal condition."

That, at defendant's suggestion, plaintiff thereafter consented to the defendant's removing a small ulcer on the lower lid of plaintiff's right eye; that defendant thereupon—

"opened the said ulcer, on doing which a quantity of pus flowed from it. Defendant thereupon unskillfully, carelessly and negligently, in order to remove the pus, took a piece of cotton batting and rubbed the pus across the ball and pupil of the eye, rubbing it in contact with the fresh sore in the pupil, from which the piece of steel had been removed;"

that the pus set up an infection, resulting in the loss of the eye. The testimony of the plaintiff to sustain this claim has been already stated.

This court has, on several occasions, decided that the liability under our workmen's compensation act rests solely upon contract. *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich. 8; *Dettloff* v. *Hammond, Standish & Co.*, 195 Mich. 117; *Crane* v. *Leonard, Crossette & Riley*, 214 Mich. 218. Money received under a contract may not be considered in a suit for damages for a tortious injury though it may have afforded compensation for the loss sustained.

There is no question but that plaintiff now seeks

to recover for the same loss (that of his right eye) for which he has been paid compensation by the insurance company. It is true that he obtained such payment by representing that the loss of his eye was caused by the injury received while at work in the factory. But the doctrine of estoppel has no application. Counsel for the defendant concede that an "estoppel is binding only on the parties to a transaction or their privies." Even though we concede, as counsel claim, that "the employer is liable for resultant injuries which include an alleged act of malpractice," plaintiff's claim is not based on any such resultant injury. To render the employer liable, in such a case, the injury must result from necessary efforts to relieve from the consequences of the original injury. In other words, the immediate agency causing the loss of the eye must be one which the first injury rendered it essential to employ. The plaintiff makes no claim that infection was introduced by the defendant while removing the steel from the eye or in its after treatment on account of such removal. His right to recover is based on the claim that after the defendant had completed the work of removing the steel he then, with plaintiff's permission, opened the pustule on the eyelid and, while removing the pus therefrom, wiped it across that part of the eye from which the steel had been removed, thereby causing the infection which resulted in the loss of the eye.

It is said that plaintiff is permitted a double recovery for the same loss. While it is true that under his own testimony he recovered compensation from the insurance company to which he was not in law entitled, this could not be considered by the jury in its award of damages. In *Smith* v. *Building Material Co.*, 204 Mich. 9, the right of an employer to a credit for moneys received by the claimant from

a physician for alleged malpractice in the treatment of the injury for which compensation was asked was denied. If the defendant was guilty of the tort complained of, he may not relieve himself from liability by showing that plaintiff had received compensation on account thereof from any other source, except through payment by a joint tort feasor. *Perrott* v. *Shearer,* 17 Mich. 48; *Baylis* v. *Cronkite,* 39 Mich. 413; *Curtiss* v. *Colby,* 39 Mich. 456; *Hagan* v. *Railroad Co.,* 86 Mich. 615; *Peter* v. *Railway Co.,* 121 Mich. 324 (46 L. R. A. 224, 80 Am. St. Rep. 500); *U. S. Casualty Co.* v. *Bagley,* 129 Mich. 70 (55 L. R. A. 616).

2. Admission of evidence. In the cross-examination of Dr. Fraser by defendant's counsel, he was asked about a lotion which the defendant afterwards testified he put into plaintiff's eye after removing the steel and gave him for subsequent use, and testified that it "would be a very good prescription." On redirect he was asked by plaintiff's counsel:

"You heard the prescription which Mr. Lodge read to you and asked you about. Would you apply a solution of the kind referred to by Mr. Lodge to a streptococcus infection of the eye?"

Over defendant's objection that the treatment of physicians could not be thus compared, the witness answered:

"I might have used that solution with additional treatment."

He was then asked, and over objection permitted to testify, what additional treatment he would have used. This was clearly error. While the defendant held himself out as a specialist in the treatment of the eyes, the test as to whether his treatment was proper should not have been based on what Dr. Fraser would have prescribed. The defendant was obligated to

215—Mich.—30.

bring to the discharge of his duty that degree of skill and knowledge possessed by physicians who are specialists in the light of present day scientific knowledge. 30 Cyc. p. 1571. Dr. Fraser, who was also an eye specialist, might have been asked as to whether the treatment prescribed evidenced the exercise of such skill and knowledge on the part of the defendant, but he should not have been permitted to state the treatment he would have used. See *Hitchcock* v. *Burgett*, 38 Mich. 501; *Pelky* v. *Palmer*, 109 Mich. 561; *Farrell* v. *Haze*, 157 Mich. 374; *Miller* v. *Toles*, 183 Mich. 252 (L. R. A. 1915C, 595) ; *Sherwood* v. *Babcock*, 208 Mich. 536; *Whitesell* v. *Hill*, 101 Iowa, 629 (70 N. W. 750, 37 L. R. A. 830, and note). This answer was particularly damaging to the defendant owing to the fact that the hypothetical question put to Dr. Fraser, heretofore quoted, assumed that "the infection had not been arrested," and the testimony of Dr. Moffatt that—

"The question as to whether there are serious results from an infection of the eye depends upon the treatment and also upon the resistance of the individual."

The jury might have concluded that the loss of plaintiff's eye was due to the negligence of the defendant in not having prescribed some different treatment.

3. Requests to charge. Defendant's 9th request to charge was:

"The plaintiff cannot recover if you find that defendant was guilty of negligence in any other respect than this one particular respect, for plaintiff has only claimed that defendant was negligent in this one respect, and he must prove such negligence as he has claimed or defendant will be entitled to your verdict of not guilty."

While in the general charge the court instructed the jury that to find for the plaintiff they must be con-

convinced from the proofs "that the infection complained of was thus caused solely by the negligent act" of the defendant in wiping the pus from the pustule into the open wound in plaintiff's right eye, we are impressed that this request should have been given. Dr. Fraser had been permitted to testify that he would have prescribed a different treatment for the eye, after the operation, than that used by the defendant. This request called the attention of the jury directly to the fact that no other element of negligence than that charged would justify a verdict in plaintiff's favor.

The defendant's 10th request reads:

"By a preponderance of the proofs, as used in this connection, is meant an overbalancing of the proofs; the production by plaintiff or the existence in the case of such an amount of testimony as overbalances; the testimony tending to prove defendant's negligence in this one respect overbalancing the testimony tending to prove his freedom from such negligence."

The court instructed the jury:

"I instruct you that the burden of proof rests upon the plaintiff to establish his claim for damages by a preponderance of evidence received, that is to say, it is his duty to produce the greater weight with more convincing effect, that is, in your mind to establish the essential fact that Dr. Vroman was guilty of negligence in treating his eye, and that such negligence was the proximate and sole cause of the loss of plaintiff's sight in his right eye."

Counsel claim that in view of the testimony of Dr. Fraser the jury might well have inferred from this language that if the defendant was negligent in his treatment of the eye after the operation, the plaintiff might recover. In the request the attention of the jury was called to the fact that there must be a preponderance of the proofs supporting the particular act

of negligence charged.    The request should have been given.

The real issue presented was, Did the defendant open the pustule on the lid of plaintiff's eye and draw the pus therefrom across that part of the eyeball from which the steel had been extracted?    The plaintiff testified that he did, the defendant that he did not. To entitle the plaintiff to recover, the jury must answer this question in the affirmative.    The court so instructed them, saying:

"That is, you are to determine from the proofs, the surrounding conditions and the evidence of the experts, whether the destructive infection originated because Dr. Vroman introduced the poisonous infection into the wound, if you find this to be true, on the eye, as the plaintiff charges."

The defendant preferred the following request:

"If the plaintiff, in connection with the payment of the compensation to him under the workmen's compensation act, claimed or represented, or accepted compensation on the ground that the sight of his right eye had been lost because of the entrance of the substance into his eye, and not because of the malpractice of the defendant, as he now claims, then you may consider such fact as an admission against his present claim, and you must then take this circumstance into consideration as one of the circumstances of the case in making up your verdict."

This request called the attention of the jury directly to the claim made under oath by the plaintiff to the industrial accident board nearly three months after this suit was begun, that the loss of his eye was due to the injury received in the factory.    The letter in the nature of an affidavit, heretofore quoted, was a sworn statement of plaintiff totally inconsistent with the claim here made, and we think the jury should have been expressly instructed that it might be considered by them as an admission on his part as to the

cause of the injury. The fact that such a claim, as to the cause of the loss of his eye, was made by him under oath, while not conclusive against him as an estoppel, was persuasive as evidence and, when requested by the defendant, the attention of the jury should have been particularly called to it.

For the errors pointed out, the judgment is reversed, with costs to appellant, and a new trial ordered.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.