IRWIN *v.* D. C. MEESE.

1. TRIAL—REOPENING PROOFS—EVIDENCE.

> After defendant in action for loss of lateral support had moved for directed verdict on ground it was not shown he was the owner or occupant of the adjoining property or had done or had anything to do with or was responsible for the excavating, the trial court should have granted plaintiff's motion to reopen proofs for the purpose of establishing defendant's connection with plaintiff's cause of action if the court were in doubt as to whether or not plaintiff had established such connection.

2. ADJOINING LANDOWNERS—LOSS OF LATERAL SUPPORT—EVIDENCE OF OWNERSHIP.

> Evidence presented in lot owners' action for damages arising from excavation on adjacent lot *held,* ample to permit jury to conclude defendant was the owner of such lot, and responsible for the excavation and removal of plaintiffs' lateral support.

Appeal from Ingham; Coash (Louis E.), J. Submitted June 14, 1949. (Docket No. 39, Calendar No. 44,400.) Decided September 8, 1949.

Case by Harold W. Irwin and wife against D. C. Meese for damages sustained as a result of defend-

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial, § 124.

[2] 1 Am Jur, Adjoining Landowners, § 25 *et seq.*

[2] Liability of one excavating on his own premises for resulting injury to adjoining building. 50 ALR 486; 59 ALR 1252.

[2] Right of excavating landowner to recover from adjoining owner amount expended by former to prevent subsidence of soil or collapse of building upon latter's land, or to recover damages caused by such subsidence or collapse. 129 ALR 623.

ant's removal of lateral support for land. Verdict
for plaintiffs. Judgment for defendant *non obstante
veredicto.* Plaintiffs appeal. Reversed and remand-
ed for entry of judgment on verdict.

*H. Donald Bruce,* for plaintiffs.

*Roy T. Conley,* for defendant.

Dethmers, J.   Plaintiffs, as owners of a house and
lot occupied by them as their home, sued defendant
for damages resulting from the latter's excavation
of his adjacent lot and removal of lateral and sub-
jacent support from plaintiffs' land. At the conclu-
sion of plaintiffs' proofs defendant moved for a di-
rected verdict on the ground that it was not shown
that defendant was the owner or occupant of the
adjacent property or had done or had anything to
do with or was in any way responsible for the exca-
vating. Plaintiffs moved to reopen the proofs for
the purpose of establishing the point. The court
denied plaintiffs' motion, reserved decision on de-
fendant's motion under the Empson act,* permitted
the defense to proceed with its proofs and, after ver-
dict by the jury for plaintiffs in the amount of $1,850,
granted defendant's motion for judgment *non ob-
stante veredicto* for the reason advanced in behalf
of his motion for a directed verdict.

At the outset it should be said that if the trial
court, at the conclusion of plaintiffs' proofs, enter-
tained doubt that plaintiffs had established defend-
ant's connection with the cause of action, it should
have granted plaintiffs' motion to reopen the proofs
at that time.

---

* CL 1948, § 691.691 *et seq.* (Stat Ann § 27.1461 *et seq.*).—
Reporter.

At the conclusion of plaintiffs' proofs the testimony included the following:

(Examination of plaintiff Harold W. Irwin.)

"To my knowledge the *defendant or his agents* did not establish any props to support my land *while they were excavating* * * * The *defendant* did not perform any act, to my knowledge, that would serve to replace *the land he removed* as a support. * * *

"*Q.* (Drawing diagram on blackboard.)

N

W . Lot 25 . Lot 24 . X . E

S

Now, letting this represent your property, I believe it is Lot 24 is the one to the east, is that correct, or is it 25, of your two lots?

"*A.* Lot 24 is the one with the house on it.

"*Q.* 24. All right. And this the property here that you claim was *owned by Mr. Meese* (drawing on blackboard).

"*A.* *To the east.*

"*Q.* We will call that 'X' for the time being. * * *

"*A.* I was there from day to day as the work was being done on the property *to the east.* * * *

"*Q.* * * * Now, you were there at all times *while Mr. Meese or any other person under his direction did work there,* weren't you, from day to day, as you told us?

"*A.* Yes. * * *

"I do not know how far it is from the west side of the house *on Meese* and Kissinger's *lot* to the lot line. * * *

"*Q.* You have alleged that you need a wall 65 feet long to stop the *erosion created by the defendant's excavation,* have you not?

"*A.* Yes.

"*Q.* Is that all the wall you are going to need to correct this condition?

"*A.* No.

"*Q.* How much more wall are you going to need other than what you are alleging as damages from the *defendant?*

"*A.* Another 10 feet.

"*Q.* And why do you need an additional 10 feet?

"*A.* For the excavation that was—that took place *after Mr. Meese left it.* * * *

"*Q.* Now, lets go back to the time this excavation was made by Mr. Meese, the defendant.

"*Mr. Conley:* Well, just a moment. If the court please, there hasn't been any testimony to that effect yet.

"*Q.* Well, did or did not Mr. Meese excavate the land adjoining your property *on the east?*

"*Mr. Conley:* If he knows.

"*A.* Not himself.

"*Q.* Did he or his agents?

"*A.* His agents. * * *

"*A.* I called Mr. Meese on the telephone. * * *

"*A.* As a result of that telephone conversation, Mr. Meese came over to see me. * * *

"*Q.* What did you say to him, and what did he say to you? * * *

"*A.* I asked him what he was going to do about the situation that existed along the west wall.

"*Q.* Yes.

"*A.* And he said it was his understanding that it was my responsibility to build a wall, and I didn't agree with him. And after we talked the whole thing over, I don't remember the exact words, it was quite a long time ago, but a few things I do remember

about the conversation were that he at no time said that he did not make the excavation. * * *

"*A.* All right. He did at that time say that he would contact his lawyer to find out more about it, whether it was his responsibility or not. Then subsequently after that—that was all that took place at that one, as near as I can remember. After that he came over to see me again shortly after that, and agreed— * * *

"*A.* He said that he would build a wall, a retaining wall, during that conversation, * * *

"*A.* ` * * * Mr. Meese did not build a wall there. I talked to Mr. Meese's son. He approached me on the excavation and brought a paper that Mr. Meese had written for me to sign. I saw the paper and read it. I did not sign the paper."

The above constituted ample evidence from which the jury might conclude that defendant was the owner of the lot to the east adjacent to plaintiffs' property, responsible for the excavation thereon and liable for removal of plaintiffs' lateral support. In truth, that conclusion is well-nigh inescapable, without regard to defendant's explicit admissions thereof on the witness stand after his motion for directed verdict.

The judgment *non obstante veredicto* is reversed and the cause remanded for entry of judgment on the jury's verdict for plaintiffs in the amount of $1,850. Costs of both courts to plaintiffs.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, BUTZEL, and CARR, JJ., concurred.