PEOPLE, *for use and benefit of* E. P. BRADY & CO., *v.* GILLILAND.

1. EVIDENCE—MEASUREMENT OF GRAVEL.
   The measurement of amount of gravel delivered from stock pile to road under highway construction subcontract for covering surface where evidence of weight was not available was properly made by subtracting the amount delivered on the road from the amount stockpiled.

2. CONTRACTS—GRAVEL—FINDINGS OF TRIAL COURT—PREPONDERANCE OF EVIDENCE.
   Findings of trial court for plaintiff in subcontractor's nonjury action against road construction contractor for gravel furnished and compacted pursuant to contract with defendant *held,* not against the preponderance of the evidence under the proofs submitted.

REFERENCES FOR POINTS IN HEADNOTES
[1] 9 Am Jur, Building and Construction Contracts §§ 137, 139.
[2] 9 Am Jur, Building and Construction Contracts § 141.
[3] 53 Am Jur, Trial § 123.
[4] 14 Am Jur. Costs § 11.

3. TRIAL—REOPENING OF PROOFS—DISCRETION OF COURT.

    The matter of reopening of proofs upon plaintiff's motion, made
    after defendant had sought a judgment upon the close of
    plaintiff's proofs, *held*, within the sound discretion of the
    trial court which will not be interfered with in the absence
    of an abuse of discretion.

4. COSTS—APPEAL AND CROSS APPEAL.

    No costs are allowed upon affirmance of judgment for plaintiff,
    where defendant appealed and plaintiff cross-appealed, since
    neither party has prevailed in full.

, Appeal from Ingham; Salmon (Marvin J.), J.
Submitted June 6, 1958. (Docket No. 45, Calendar
No. 47,581.) Decided October 13, 1958. Rehearing
denied December 2, 1958.

Nonjury action in the name of the People of the
State of Michigan, for the use and benefit of E. P.
Brady & Co., a Michigan corporation, against Wil-
liam H. Gilliland and Standard Accident Insurance
Company, a Michigan corporation, on guaranty bond
for contract price of material and labor furnished on
county road construction job. Judgment for plain-
tiff. Defendant appeals. Plaintiff cross-appeals.
Affirmed.

*McCune & Austin* (*William A. Austin,* of counsel),
for plaintiff.

*Isadore Isackson,* for defendants.

SMITH, J. The E. P. Brady & Co., a Michi-
gan corporation, entered into 2 contracts with de-
fendant William H. Gilliland. The contracts related
to the construction of a county road in Iosco county.

    Defendant Gilliland, hereafter termed defendant,
was the prime contractor with the State of Michi-
gan.* His contract called for covering an aggregate

* Action here joined the surety on the bond required by CL 1948,
§ 570.101 (Stat Ann 1953 Rev § 26.321).

surface course of 48,700 square yards of gravel to a compacted thickness of 5 inches. Plaintiff E. P. Brady & Co., hereafter termed plaintiff, offered, with respect to this project, as follows:

"QUOTATION No. 139
Date June 9, 1955

To W. H. Gilliland
  R.R. #2, Alpena, Michigan
PROJECT OR USE:   Iosco Co. Project #C5 35–31, C1
                  (S 1319 (1)

For the above-captioned project or use we propose to furnish all of the purchaser's requirements of the following materials at the prices, terms, and conditions named herein, and on the back hereof:

| Estimated Quantity | Kind of Material | Price per yd. | F.O.B. |
|---|---|---|---|
| 10,590 yds. | M.S.H.D. 4.01 | 2.40 | Stockpile West End of Job" |

In addition to furnishing the gravel, as above, plaintiff also offered to compact the same:

"QUOTATION No. 139A
Date June 9, 1955

Sub-Contract

To W. H. Gilliland
  R.R. #2, Alpena, Michigan
PROJECT OR USE: Iosco Co. Project #CS 35–31, C1
                (S 1319 (1)

For the above-captioned project or use we propose to furnish all of the purchaser's requirements of the following materials at the prices, terms, and conditions named herein, and on the back hereof:

| Estimated Quantity | Kind of Material | Price per yd. | F.O.B. |
|---|---|---|---|
| 10,590 yds. Placed | Compacted on Road | .45 | In Place" |

Both of these offers were accepted by defendant on July 2, 1955. The question before us relates to performance.

It is plaintiff's contention that he furnished 11,303.565 yards of gravel in performance of one contract, entitling him to $27,128.56, and that he placed and compacted 10,748.567 yards, entitling him to $4,836.86, totalling $31,965.42. Of this amount, he claimed, there was $8,771.35 unpaid and he demanded judgment in such sum. The trial judge awarded him a total of $6,111.63. Defendant appealed and plaintiff cross-appealed.

Most of the argument at the trial related to the fundamental questions as to how much gravel had been delivered to the job, and, subsequent to delivery, actually placed and compacted on the road. If there had been competent and satisfactory proofs as to the weight of gravel delivered the problem would be simplified, but such proofs apparently were not available. Certain original weight slips had been burned and there were large, unreasonable, and unexplainable discrepancies between the amounts of gravel claimed to be delivered and that actually placed on the road. Under these circumstances the trial court concluded that he was "not satisfied with the proof as to delivery, on that [weight] basis" and made his determination from the testimony as to the quantity of gravel stock-piled and delivered on the road. We agree that upon the proofs as presented such was an entirely proper method of determination.

It was plaintiff's claim that he placed and compacted on the road 10,748 yards of gravel. Defendant asserts that this is an excessive figure. It is his position that:

"It takes 6 inches to make 5 inches if compacted. Therefore, the said plaintiff should have used 8,111 cubic yards of gravel instead of 10,748.567. 8,111 yards at a total of $2.85 comes to $23,116.35, which

makes a difference of $8,849.07 between figures of plaintiff and defendant. Defendants allege that the plaintiff could not have used as much gravel which it claims and that it is unable to sustain its allegations of the amount of gravel compacted on the job. Plaintiffs [defendants?] further allege that considering the area to be covered the plaintiffs could not have used as much gravel as claimed."

On this issue much testimony was taken. According to witness Rodney V. Meade, the "general rule of thumb" is that it requires 6 inches of loose gravel for a compacted thickness of 5 inches. Likewise, witness Quaine testified that "2 layers of 3 inches will do it and give you compaction in good shape, give you a 5-inch compaction." On the other hand it was testified that "rules of thumb" were subject to variations depending upon the roadbed, the amount of moisture in the ground, the gradation of the gravel, and other factors. "You can estimate, roughly, you might compact from probably 15 to 35%." Specifically, as to this particular road, witness Edsel testified that "we had our spreader out for about 3-1/2 inches, and we made two 3-1/2-inch passes to get approximately 7 inches of loose gravel to get 5 compacted, and then, of course, we didn't get it and had to sweeten." The trial court concluded, upon this and other testimony not necessary to set forth, that 7 inches of gravel had been placed on the 48,700 square yards and that 9,435 cubic yards had been required for this purpose. In addition to the gravel spread as described above, additional gravel was required "in order to stabilize" the road in certain spots. "They [the trucks] would get stuck in places and had to dump ahead of the spreaders  *  *  *  it [the gravel] didn't actually go through the spreaders but was dumped." This amount was not separately measured in any way but was submitted as a percentage of the total, of which the court allowed only a

part, stating that the higher figure claimed was "unreasonable," the road having at this time been accepted for surfacing. We are not persuaded of error in the determination so made in the light of the entire testimony as to road conditions. It appeared, also, that due to underlying soil conditions the gravel normally required for the final required thickness had to be "sweetened" with additional amounts in certain spots. That is, "additional gravel has to be put on after the aggregate surface supposedly has been placed and compacted. There isn't the required depth of aggregate in position." Continuing with the computations from the standpoint of gravel used, the trial court allowed an amount of 490 cubic yards for the approaches and an amount of 200 cubic yards as "a fair and reasonable amount of stock-pile loss." The court thus concluded that 10,650 cubic yards had been stock-piled and of this amount, 10,450 yards (stock-pile total, less shrinkage or loss) had been spread and compacted. From the amount so computed to be due, the court subtracted the contract price for 420 cubic yards taken from a second stock pile for which plaintiff had previously been paid in full. The total sum thus found due plaintiff, making allowance for payments theretofore made, was $6,111.63 (correction of arithmetical errors made in computing the contract price for gravel spread. and for gravel taken from the second stock pile, reduces this figure to $6,060.43).

Although there was controversy as to most, if not all, of the factual determination thus made, it does not appear to us that the trial court was in error in proceeding and concluding as he did on the proofs before him. It cannot be said, upon this record, that the evidence clearly preponderates in favor of the cause of defendant-appellant Gilliland. See *Schneider* v. *Pomerville*, 348 Mich 49.

At the close of plaintiff's proofs defendant asked the court for judgment in his favor upon the theory that plaintiff had not established the amount of gravel used on the job. The court, upon plaintiff's request, thereupon permitted the recall of a former witness to the stand for the purpose of taking additional testimony. We need not pass upon the question as to whether or not plaintiff had made out a prima facie case up to this time, for we are committed to the position that a reopening of the proofs upon plaintiff's motion is a matter within the sound discretion of the trial court, with which discretion we will not interfere, absent a showing of abuse thereof, which, in this case does not appear. See 53 Am Jur, Trial, § 124; cf., *Irwin* v. *Meese,* 325 Mich 344.

The questions raised on cross appeal, relating to the amount of gravel stock-piled, and allowance for gravel required to stabilize the roadbed, have been considered in the foregoing. The judgment, corrected for arithmetical errors heretofore indicated, is affirmed. Neither party having prevailed in full, no costs.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.