## SCHREINER v. AMERICAN CASUALTY COMPANY.

1. APPEAL AND ERROR—DIRECTED VERDICT—JUDGMENT NOTWITH-
STANDING VERDICT—EVIDENCE.
   Evidence is viewed in the light most favorable to the plaintiff on
   appeal from judgment for plaintiff on denial of motions by
   defendant for a directed verdict and for judgment notwith-
   standing the verdict.

2. INSURANCE—ACCIDENT—EVIDENCE—HYPERACTIVE CAROTID SINUS
REFLEX.
   Evidence presented by beneficiary in action under accident in-
   surance policy *held*, sufficient to present to jury the issue of
   whether the insured's nonwitnessed death was accidental and
   to support jury's verdict for plaintiff, where it showed setting
   in which the body of insured was discovered, an estimated 2
   days following date of death, that a general physical checkup
   some 8 months preceding death revealed no sign of heart
   trouble but presence of a hyperactive carotid sinus reflex, and
   the county medical examiner conceded there was a possibility
   that such reflex could have been a cause of death.

3. TRIAL—EVIDENCE—INFERENCES—FUNCTION OF JURY.
   A jury may draw reasonable and legitimate inferences and con-
   clusions from established facts, and jurors are the judges of
   the legitimate inferences to be drawn from the testimony.

4. SAME—INFERENCES—EVIDENCE—QUESTION FOR JURY.
   A jury question is presented where conflicting inferences can be
   drawn from the evidence, or where the evidence is such that
   reasonable minds may differ as to the inferences to be drawn
   from the evidence.

---

### REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 885.
[2] 29A Am Jur, Insurance §§ 1852, 1931.
[3–5] 53 Am Jur, Trial § 186.
[6] 29A Am Jur, Insurance § 1942.
[7] 53 Am Jur, Trial § 559.

5. Same—Inferences.

Circumstances in their entirety that are shown which justify inferences bringing liability within the realm of probability should be left to the jury, even though separate items of testimony standing alone might not warrant the court in submitting the claim of a party in support of which they are offered to the jury.

6. Insurance—Accident—Instruction.

Instruction, given in beneficiary's action on an accident insurance policy wherein trial court repeatedly indicated what plaintiff had to prove and then stated that jury should recall deceased's neck was severely flexed and cramped, a condition which actuated or increased the carotid sinus reflex setting up a chain of reactions causing heart to stop, *held*, without error.

7. Trial—Questions by Jury—Repetition of Pertinent Portions of Charge.

Trial court's treatment of 2 written questions jury submitted as to what jury had to find *held*, not an abuse of judicial discretion, where judge caused repetition of pertinent earlier charges without directly answering the questions posed, it being apparent the court was cautiously trying to avoid invading the province of the jury.

Appeal from Wayne; Piggins (Edward S.), J. Submitted Division 1 January 14, 1965, at Detroit. (Docket No. 225.) Decided April 19, 1965. Leave to appeal denied by Supreme Court June 28, 1965.

Declaration by Martha Schreiner against American Casualty Company, a foreign insurance corporation, as beneficiary under an accident policy issued to her deceased husband. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Bratton, Bratton & Roskopp* (*Carron, Carron, Ripple & Chambers,* of counsel), for plaintiff.

*Ward, Plunkett, Cooney, Rutt & Peacock* (*Robert E. Rutt, William D. Booth,* and *Charles T. McGorisk,* of counsel), for defendant.

J. H. GILLIS, J. This is an action brought by Martha Schreiner, the beneficiary of an accident insurance policy issued by the defendant American Casualty Company on the life of decedent Leo R. Schreiner. The policy provided for payment of $250,000 for death "resulting directly and independently of all other causes from bodily injury sustained during the term of the policy and effected solely through accidental means."

There were no witnesses to decedent's death. His body was found on April 11, 1960, in the bathroom of his Detroit apartment. Decomposition had commenced and death was estimated to have occurred on or about April 9th. In the bathroom and near the body was a four-step ladder in an upright position on the vinyl-tiled floor. There was a bucket on the floor underneath the sink, a bottle of liquid detergent on the sink, rags on the side of the washbowl and rags or a sponge in the pail. Hot water was running in the wash basin. Decedent's body was lying on the floor with the left side of the head up against the bathtub.

A judgment was entered upon jury's verdict for plaintiff.

The first point that appellant American Casualty Company questions on appeal is the failure of the trial court to direct a verdict or to grant a judgment notwithstanding the verdict. Appellant claims there is insufficient evidence to support a finding of accidental death. In considering this question we must view the evidence in the light most favorable to the plaintiff who prevailed below. *Gapske* v. *Hatch* (1957), 347 Mich 648.

Mr. Schreiner had a general physical checkup in August, 1959. Dr. Brock E. Brush, who participated in that examination, testified that at that time he found deceased had a hyperactive carotid sinus reflex. He explained:

"This carotid sinus is a group of nerves which control the blood supply to the brain. This enables a person, when sitting down or lying down or standing up, to maintain an adequate blood pressure to the brain at all times, and this is what controls it. This carotid sinus may be sluggish in some individuals, so that when they have been sitting down a short time, they become a little dizzy and have to get up rather slowly. With other people whose carotid sinus is hyperactive, any pressure or any sensation or any compression of the neck will cause this reflex to become active and will slow down the heart as a reflex mechanism and will cause that person to lose consciousness."

Dr. Brush said that because of this condition, any pressure on the side of decedent's neck would cause a marked slowing of the heart to a point that he would become unconscious.

The doctor testified that, in his opinion, the cause of death was a blow on the head, causing a concussion and subsequent unconsciousness. With the neck crimped over to the side, the hyperactive carotid sinus reflex was activated and death followed. He further stated that his 1959 examination of the decedent revealed no signs of any heart trouble. This testimony was substantiated by that of Dr. John R. McDonald.

Dr. Edward Zawadzki, Wayne county medical examiner, conceded that there was a possibility that the carotid sinus reflex could have been a cause of death.

In view of the doctors' testimony as to decedent's physical condition and cause of death and considering the setting in which the body was discovered, we conclude that there was sufficient evidence not only to justify submitting the case to the jury but also to support its verdict for plaintiff.

This case is well within the following basic legal principles quoted from 22 MLP, Trial, § 137, at p 312.

"A jury may draw reasonable and legitimate inferences and conclusions from established facts, and jurors are the judges of the legitimate inferences to be drawn from the testimony.

"A jury question is presented where conflicting inferences can be drawn from the evidence, or where the evidence is such that reasonable minds may differ as to the inferences to be drawn from the evidence.

"Where there are such circumstances shown as to justify inferences which bring liability within the realm of probability, the question of inferences should be left to the jury; and, while separate items of testimony, standing alone, may not warrant the court in submitting the claim of a party in support of which they are offered to the jury, the court may be warranted in submitting all of the facts and circumstances which the evidence tends to establish to the jury."

The second question raised by appellant is whether the trial judge erred in instructing the jury as follows:

"The plaintiff would have you believe that the blow Mr. Schreiner sustained on his head, causing him to lie there for an indefinite period of time—*and you will recall his neck was severely flexed and cramped*—actuated or increased the carotid sinus reflex which set up a chain of reactions causing the heart to stop." (Emphasis added.)

Appellant contends that in making the above emphasized comment the trial judge decided an issuable fact and thereby invaded the jury's province.

The above emphasized portion of the charge is excerpted from the middle of a seven sentence paragraph in which the court gave the jury the plaintiff's theory of her case. Five sentences in that para-

graph contain cautionary words to the jury, such as, "plaintiff must show," "plaintiff must prove," "plaintiff claims."

It is important also to point out that the jury viewed photographs taken of the body and were able to evaluate for themselves the position of the neck. These jurors had the same opportunity to form an opinion from their view of the photographs as did the plaintiff's and defendant's witnesses. This court finds no error in this instruction.

Appellant's third and final contention is that the trial court erred in its treatment of two written questions submitted by the jury during its deliberation.

The first question was:

"To be termed accidental, is it necessary that the jury concur that the deceased have fallen, slipped or tripped, resulting in a bump on his head, which set off the reactions claimed by the plaintiff?"

In answer to this the trial court had the reporter read back to the jury his earlier charge on the definition of accident. Appellant contends that the trial judge should have answered this question in the affirmative.

The second question was:

"If Mr. Schreiner had a dizzy spell, fainted or suffered a heart attack which resulted in a fall which set off the chain of events claimed by the plaintiff, would this be termed accidental? This is assuming that the cause of death ultimately was the hypersensitive carotid sinus reflex."

In answer to this question the judge had the reporter read back to the jury his earlier charge on the respective duties of judge and jury. Appellant argues that the question should have been answered by reference to the original charge regarding the

parties' conflicting theories of cause of death. A similar contention was made in *Long* v. *Township of Weare* (1917), 195 Mich 706, 712. What was said there is appropriate here.

"The court had very fully covered the questions in the case in his charge, and the charge as given had covered the subject-matter inquired about by the jurors; he had quite fully instructed them when they had returned for further instructions before. While he might have had the charge read to the jury again, or repeated what he had said on former occasions, it was not error to decline so to do."

It is apparent from the transcript that in treating the questions as he did the trial court was cautiously trying to avoid invading the province of the jury. We find no abuse of judicial discretion by the trial court in its treatment of the two questions.

Judgment affirmed. Costs to appellee.

Lesinski, C. J., and Watts, J., concurred.