## RUCKER *v.* WYANDOTTE SAVINGS BANK.

1. CONTRACTS—ORAL AGREEMENT—SUPERVISION OF CONSTRUCTION—
QUESTION FOR JURY.
   Terms of an oral agreement between bank and its customers as
   to bank's duties in supervising performance of a construction
   contract *held*, properly left to determination by jury when tes-
   timony on terms was conflicting and to support jury's verdict
   that bank had breached its agreement with plaintiff.

2. TRIAL—REOPENING CASE—DISCRETION OF COURT.
   Reopening of case to permit plaintiff to take expert testimony
   on question of damages is a matter within the discretion of
   the trial court, with which an appellate court will not interfere,
   absent a showing of abuse of discretion.

3. CONTRACTS—BUILDING—EXPERT WITNESS—ROUGH PLASTERING.
   Question of what work would have to be completed before rough
   plastering in building a house *held*, within the particular
   province of testimony by expert witness who had 28 years'
   experience as general contractor.

4. SAME—CONSTRUCTION CONTRACT—COST—EXPERT OPINION.
   Contractor who had 28 years' experience in building *held*,
   qualified to give expert testimony from his experience as to
   necessity and reasonableness of expenditures for work to bring
   building to stage of completion called for by construction
   contract.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 53 Am Jur, Trial § 254.
   13 Am Jur 2d, Building and Construction Contracts § 128.
[2] 53 Am Jur, Trial § 123.
[4] 13 Am Jur 2d, Building and Construction Contracts § 125.
[5, 6] 13 Am Jur 2d, Building and Construction Contracts §§ 21, 37.
[7] 49 Am Jur, Statute of Frauds § 589.
   50 Am Jur, Suretyship §§ 2, 10, 17.
[8] 41 Am Jur, Pleading §§ 155–159.
[9] 20 Am Jur 2d Costs § 15.

5. SAME—BREACH—DAMAGES—SUPERVISION OF CONSTRUCTION—WAIVER OF LIEN.

Loss to customer of bank, for whom bank was supervising construction of house, because customer remained liable for work performed by certain subcontractors, for which contractor was supposed to pay before disbursement to him by bank of partial payments called for by building contract, *held*, the natural and probable result of failure of bank to collect sworn statements of use and application of money from contractor and waivers of lien from subcontractors as was its duty under oral contract of supervision.

6. SAME—BREACH—DAMAGES—SUPERVISION OF CONSTRUCTION.

Damages to customer of bank for breach of oral contract by which bank agreed to supervise performance of house construction contract, which breach consisted of paying building contractor part of money called for on completion of third stage of construction before third stage was completed, after which performance was abandoned by building contractor, *held*, to be measured by reasonable cost to customer of completing construction to third stage, less the saving on third stage payment effected by the paying out of only part of it.

7. SAME—SUPERVISION OF CONSTRUCTION—SURETYSHIP.

Oral contract between bank and its customer by which bank agreed to ascertain whether work called for by construction contract had been performed, to collect waivers of mechanics' liens from subcontractors and sworn statements of application of funds from contractor, and to pay out money to contractor only as it became due under terms of contruction contract, *held*, not an agreement by bank to be surety for performance by contractor, and hence not to be unenforceable under statute of frauds (CL 1948, § 566.132).

8. DAMAGES—JUDGMENT AGAINST ANOTHER—SATISFACTION—DEFENSES.

Satisfaction of damages is an affirmative defense, to sustain which it must be shown that plaintiff's losses have been compensated, and court will not speculate as to what losses of plaintiff were rectified by rendition of consent judgment against a codefendant of one pleading satisfaction, when there are no proofs on the matter of what losses were rectified.

9. COSTS—NEITHER PARTY PREVAILING.

No costs are awarded on appeal by defendant from jury verdict and judgment in favor of plaintiff, where judgment is modified by reducing its amount, and affirmed as modified.

Appeal from Oakland; Adams (Clark J.), J. Submitted Division 2 November 9, 1966, at Lansing. (Docket No. 1,008.)   Decided February 28, 1967.

Declaration in assumpsit by Edwin H. Rucker and Eleanor E. Rucker against Bernard Groves for breach of building contract.   Wyandotte Savings Bank, a Michigan banking corporation, added as party defendant and declaration amended.   Consent judgment against Groves.   Verdict and judgment against bank.   Defendant bank appeals. Judgment modified, and affirmed as modified.

*Davidow & Davidow,* for plaintiffs.

*William C. Williams,* for defendant Wyandotte Savings Bank.

FITZGERALD, J.   In the fall of 1961, plaintiff, Edwin Rucker, decided to build a new home on Grosse Ile.   He obtained plans and contacted various builders for estimates, finally reaching a tentative agreement with Bernard Groves, who was then constructing a house near the proposed homesite.

Rucker went to the offices of defendant Wyandotte Savings Bank to discuss financing and obtain advice on the terms of the construction agreement. One of the bank's employees suggested changes which were incorporated in the agreement which was then retyped at the bank and signed by Rucker and Groves.

An accord on financing was also reached and secured by a demand note for which Rucker pledged $100,000 worth of securities as collateral.   It was further agreed that the bank should act as disbursing agent of the funds.

In November, 1961, construction of the house began. The hole was dug, foundations laid, and basement walls erected. By the terms of the construction contract, the first draw became due and was paid by the bank. Rucker signed a demand note in the amount of the first draw. Work proceeded and the house was roughed-in and roofed. The second draw became due and was paid by the bank. Rucker signed a second demand note.

Thereafter, difficulties arose between Groves and Rucker and progress on the house became sporadic and unsatisfactory. Rucker visited the bank several times, complained about Groves, and requested the bank to withhold further payments to Groves.

At the same time, Groves was entreating the bank for advances on the third draw. On February 14, 1962, the bank disbursed $6,000 to Groves as an advance on the third draw. According to Rucker, this money was advanced against his wishes and in contravention of the construction agreement.

After February, 1962, little work was done on the house. Groves threatened to abandon the job unless he received more money. On March 10, 1962, the bank arranged a meeting between Rucker, Groves and bank representatives. As a result, Groves was given an additional $2,000 and Rucker signed a fourth note, though the work required under the construction contract's third draw provisions was not complete. He claimed, however, that he assented to this additional payment only after the bank threatened to withdraw financing if the requested money was not paid.

After March 10, 1962, Groves did no further work on the house and in the spring of 1962, Rucker undertook to complete the house. A special account, called the "house account", was opened at the bank. All further disbursements made to com-

plete the house were made with checks on this account.

On May 25, 1962, suit for damages was filed by Rucker against Groves, and the bank was later added as a defendant. In 1965, a consent judgment was entered against Groves. The jury returned a verdict against the bank for $6,102.04, which the bank appealed.

On appeal, the bank offers a multiplicity of questions, covering three pages of their brief, but boiling down to some rather narrow bases. Chief among these is whether the terms of the contract between Rucker and the bank and the breach thereof were questions of fact for the jury. In the second place, they question the award of damages and the amount thereof as determined by the jury. Tangentially concerned are a number of rulings by the trial court relative to admission of evidence, allowing plaintiff to reopen after resting, and allowance of expert testimony.

The main controversy involves what duties the bank undertook as disbursing agent and whether moneys were improperly paid out. It is undisputed that Rucker paid a fee of $150 to the bank for acting as disbursing agent. This fee came to be known as the "construction fee" and was supposed to cover the cost of obtaining waivers of mechanics' liens and sworn statements as to the use and application of funds from Groves. These waivers were to be obtained before progress payments or "draws", as they were termed in the construction contract, were made.

Testimony on the terms of the construction fee agreement between Rucker and the bank was conflicting. The trial judge correctly left to the jury the determination of the terms of this oral agreement. *Tompkins* v. *Hitchcock* (1888), 69 Mich 123.

Both Rucker and the bank agree that the bank assumed a duty to collect waivers of mechanics' liens and sworn statements from the contractor. It is also contended by Rucker that the bank agreed to supervise construction to the extent of inspecting to see that all the work called for in the contract had been completed before any draw was paid.

Testimony on the question of whether the bank had agreed to perform this additional quasi-supervisory duty was in sharp conflict. The bank argued that inasmuch as the loan was not a mortgage loan, they had little or no interest in the amount of work being done. Rucker contended that since he was a neophyte in the ways of building, he had bargained for supervision to the extent necessary to ascertain whether a draw was due. The disparity in the testimony concerns whether or not the bank agreed to disburse funds in conformity with the terms of the construction contract and to ascertain whether or not the house had been completed to the point a draw was due. The undisputed testimony of Groves was that bank personnel did inspect the house at least three times.

There is no dispute that the bank did not collect the waivers of mechanics' liens and sworn statements from Groves as required by the construction fee agreement. It is also undisputed that the bank disbursed funds to Groves in the amount of $8,000 before they were due under the construction contract. The facts furnished sufficient evidence from which the jury could infer that the bank had breached its construction fee agreement with plaintiff Rucker.

After resting his case, Rucker was allowed to reopen and call an expert witness on the matter of damages. This is a matter within the discretion

of the court. As was pointed out in *People* v.
*Gilliland* (1958), 354 Mich 247, 253:

"We need not pass upon the question as to
whether or not plaintiff had made out a *prima
facie* case up to this time, for we are committed to
the position that a reopening of the proofs upon
plaintiffs' motion is a matter within the sound dis-
cretion of the trial court, with which discretion
we will not interfere, absent a showing of abuse
thereof."

No such abuse appears on this record.

Plaintiff's expert witness, a general contractor
with 28 years' experience, testified as to two sep-
arate propositions. By the agreement terms, the
third draw became due after the house was rough
plastered. The expert testified as to what work
would have to be completed before rough plaster-
ing. Such questions are within the particular prov-
ince of expert testimony. *Ranta* v. *Newport Mining
Co.* (1914), 180 Mich 459.

Second, Rucker, attempting to establish the rea-
sonableness of the sums he spent to complete the
work required, presented the expert with bills paid
for work done to complete the third draw, asking
for comment on the necessity, amount, and reason-
ableness of the charges. He testified that, from
his experience, the charges were reasonable and
necessary. This he was qualified to do. See 32
CJS, Evidence, § 546(73). Through his expert wit-
ness, plaintiff established that the sum of $4,957.04
was a reasonable expenditure for the work con-
tracted for to complete the third draw.

Two separate classes of damages were adduced
by plaintiff Rucker. First was the money paid out
to contractors who should have been paid with
money disbursed on the first and second draws.
These bills amounted to $1,180. Plaintiff's theory

as to this class of damages was simple and irrefutable. If the bank had performed its admitted duty to collect sworn statements of use and application and waivers of mechanics' liens, Rucker would never have become liable for these bills. The loss was the natural and probable result of the failure to collect them.

As to the second class of damages propounded by plaintiff, the money expended to complete the work required before the third draw became due and owing, there is more difficulty. It is undisputed that the bank disbursed funds to Groves before they were due on the third draw. As his measure of damages, Rucker, by his expert witness, proved the amount of money spent to complete the work called for in the third draw. The amount proven was $4,957.04. There is no evidence that this sum was unreasonable.

It is difficult, however, to see how plaintiff is entitled to the full amount of money expended to complete the work called for in the third draw. Had the bank paid the contractor all the money called for in the third draw, $9,287.50, plaintiff arguably would be entitled to the full $4,957.04 he spent to complete the work. However, it is undisputed that only $8,000 of the $9,287.50 was disbursed to the contractor. Therefore, in no event would plaintiff Rucker be entitled to the full cost of completing the work required under the third draw. The difference between the $9,287.50 called for in the construction agreement and $8,000 actually disbursed by the bank, or $1,287.50, should have been deducted from the amounts expended to complete the work.

The bank's contention that the construction fee agreement, as interpreted by Rucker, made the bank a surety and therefore would have to be in

writing to be enforceable* has little appeal. The agreement, as propounded by Rucker, was that the bank would pay the draws only as they came due according to the construction contract, to ascertain whether the work called for was, in fact, done, and to collect the waivers of mechanics' liens and sworn statements. Rucker at no time contended that the bank insured Groves' performance. Nor do the damages claimed by Rucker make the bank a surety. Plaintiff merely states that if the bank had not disbursed money to Groves in contravention of the terms of the construction fee agreement, plaintiff would not have incurred the losses that he did. This does not make the bank the surety of Groves' performance.

Defendant bank contends that Rucker had been made whole by the consent judgment rendered against contractor Groves. Satisfaction, however, is an affirmative defense, GCR 1963, 111.7, and it was never shown what losses were compensated in the Groves judgment. We will not speculate on what losses were rectified.

Other questions raised have been considered and deemed without significance or merit.

The verdict is modified by deducting $1,287.50 and thereafter affirmed.

No costs, neither party having prevailed in full.

QUINN, P. J., and T. G. KAVANAGH, J., concurred.

---

* See CL 1948, § 566.132 (Stat Ann 1953 Rev § 26.922).—REPORTER.