*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF HENRY GEROW, JR., by MARIE
GEROW, Personal Representative,

UNPUBLISHED
July 2, 2020

Plaintiff-Appellant,

v

No. 348221
St. Clair Circuit Court
LC No. 17-001458-NH

RONALD L. THIES, JR., M.D. and EMERGENCY
MEDICINE SPECIALISTS, PC,

Defendants-Appellees,

and

ST. JOHN RIVER DISTRICT HOSPITAL,

Defendant.

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

GLEICHER, J. (*dissenting*).

This medical malpractice case arises from the death of Henry Gerow. An autopsy revealed that Gerow died as a result of pneumonia and sepsis. Three days before his death, Gerow presented in the emergency department of defendant St. John River District Hospital and was evaluated by defendant Ronald L. Thies, Jr., M.D. Plaintiff alleges that the standard of care required Dr. Thies to obtain a chest x-ray, and that a chest x-ray would have revealed pneumonia. With proper treatment, plaintiff contends, Gerow would have survived.

The circuit court granted summary disposition to defendants under MCR 2.116(C)(10), ruling that plaintiff failed to present evidence of causation. In the circuit court's view, it was "purely speculative" whether a chest x-ray would have demonstrated a treatable pneumonia. The majority affirms this ruling, citing a carefully selected and legally irrelevant portion of the expert testimony. The majority opinion inexplicably omits even a bare mention of the expert testimony directly supporting plaintiff's causation claim.

Contrary to the majority's recitation of the facts, plaintiff's experts clearly and unequivocally testified that a chest x-ray likely would have revealed pneumonia, and that treatment would have saved Gerow's life. I respectfully dissent.

I

The majority's causation analysis fails to adhere to a core summary disposition principle: the evidence presented at summary disposition must be viewed in the light most favorable to the nonmoving party. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 251; 901 NW2d 534 (2017). A court must credit competent evidence presented by the nonmoving party and draw all reasonable inferences supported by that evidence. A court may not make findings of fact or assess the credibility of witnesses. *White v Taylor Distrib Co, Inc*, 482 Mich 136, 142-143; 753 NW2d 591 (2008).

Nor may a court simply ignore testimony supporting the nonmovant's claim.

II

On November 7, 2013, Henry Gerow sought care in the River District Hospital emergency room. He complained of back pain. This was Gerow's third visit to the emergency department in five days. On November 7, Gerow complained that his pain was exacerbated by breathing—a new symptom. He also reported that the pain radiated to the upper right quadrant of his abdomen.

Plaintiff's emergency medicine expert, Dr. Marc Eckstein, explained that the standard of care required a chest x-ray because this was Gerow's third visit within a short time, the character of his pain had changed to include pain with respiration, and the pain involved a new area (the upper right abdomen). The differential diagnosis included an abdominal dissection, a cardiac event, "lower lung pathology, pneumonia, pulmonary embolism, a musculoskeletal problem of the back," and other processes, Dr. Eckstein opined. "[A]t the very least," Dr. Eckstein maintained, Dr. Thies "should have gotten a chest x-ray at that point."

Dr. Eckstein was closely questioned regarding whether a chest x-ray would have demonstrated the presence of pneumonia. The majority holds that Dr. Eckstein's testimony failed to create a material fact question on this score. Here is the snippet of testimony on which the majority relies for its conclusion:

> *Q*. How do you know [a chest x-ray] would have shown a pneumonia when [Gerow] doesn't have any of the signs of symptoms that are consistent and compatible with pneumonia?
>
> *A*. I can't say for certain.
>
>           * * *
>
> *A*. I can't say with certainty . . . that the x-ray would have shown a pneumonia, correct.

Note that Dr. Eckstein's answer was phrased in terms of "certainty." It did not address the actual standard: probability.

Sadly, the majority has mischaracterized the record regarding Dr. Eckstein's proximate cause testimony by focusing only on irrelevant statements about "certainty." I turn to the testimony that the majority ignores, and which establishes a material question of fact regarding causation.

The question and answer immediately before the text quoted by the majority speaks directly to causation, but the majority fails to cite it. Here it is:

> *Q.* Is it your belief that somehow a chest x-ray would have shown these microabscesses in the lungs?
>
> *A. It would have shown pneumonia*, but not the microabscesses. [Emphasis added.]

Why did the majority omit this testimony? I have no explanation for this error. I also have no explanation for the majority's failure to cite Dr. Eckstein's additional testimony addressing causation. Here is what the majority elected not to include in its opinion, or to even confront:

> *Q.* Well, with what you saw in the autopsy, would you believe that a lower lobe pathology would be noted in the chest x-ray?
>
> *A.* Yes.
>
>       \*   \*   \*
>
> *A.* I think, based upon the autopsy, I think it's within medical probability the x-ray . . . would have been helpful.
>
>       \*   \*   \*
>
> *Q.* I think you said that you couldn't say with certainty that a chest x-ray would have shown pneumonia, but you can say - - with what degree of probability can you say a chest x-ray would have shown some pneumonia?
>
> MR. WULFMEIER: Again, object to form.
>
> *A.* I think it's within medical probability.
>
> *Q. So more probable than not.*
>
> *A. Yes.* [Emphasis added.]

Dr. Eckstein testified without equivocation that in his view, a chest x-ray probably would have revealed Gerow's fatal pneumonia. He was not "certain" of this—and who could be, since the x-ray wasn't obtained? He had no such reluctance in affirming that more probably than not, the x-ray would have shown pneumonia. That testimony created a material fact question regarding "but for" causation. Nothing more was required.

In a tort case such as this, a court must determine whether the defendant's negligence was the cause in fact of the plaintiff's injuries. *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017). Evidence supporting "a logical sequence of cause and effect" suffices. *Skinner v Square D Co*, 445 Mich 153, 159-160; 516 NW2d 475 (1994). Once a plaintiff produces the factual support establishing a logical sequence of cause and effect, the plaintiff must also come forward with evidence supporting that the actual cause was proximate, meaning that it created a foreseeable risk of the injury the plaintiff suffered. *Id*. at 160, 163; *Lockridge v Oakwood Hosp*, 285 Mich App 678, 684; 777 NW2d 511 (2009). In a medical malpractice case, circumstantial evidence may suffice to demonstrate but-for causation, as long as it leads to "a reasonable inference of causation and [is] not mere speculation." *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 87; 776 NW2d 114 (2009).

Dr. Eckstein's testimony was not "speculative," hypothetical, or otherwise inadmissible. Rather, it supported a causal link between a breach of the standard of care (failure to obtain a chest x-ray) and the injury (untreated pneumonia that progressed to sepsis and death). Had the x-ray been obtained, Dr. Eckstein asserted, it was "more probable than not" that the pneumonia would have been diagnosed. The testimony of plaintiff's second expert witness, Dr. James Gordon, supplied the next link in the causation chain: treatment with antibiotics on November 7 likely would have saved Gerow's life.

The majority's reliance on Dr. Eckstein's lack of "certainty" represents a second, and equally egregious error. Certainty has never been required to establish causation. See *Falcon v Mem Hosp*, 436 Mich 443, 451; 462 NW2d 44 (1990) ("All this is simply to say that the more probable than not standard, as well as other standards of causation, are analytic devices-tools to be used in making causation judgments. They do not and cannot yield ultimate truth. Absolute certainty in matters of causation is a rarity."); *Harrison v Lorenz*, 303 Mich 382, 391-392; 6 NW2d 554 (1942) ("The testimony of this witness was not rendered incompetent because he could not state with positive certainty as to the exact location of the leak."); *Wood v Vroman*, 215 Mich 449, 461; 184 NW 520 (1921) ("The plaintiff was not required to prove to an absolute certainty that the infection was caused by the introduction of the germs in the pus."); *Birou v Thompson-Brown Co*, 67 Mich App 502, 510; 241 NW2d 265 (1976) ("It is not necessary for an expert witness to state an opinion in terms of absolute certainty for it to be admissible.").

Aside from the caselaw, the governing statute, MCL 600.2912a(2), provides the applicable standard: "In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that *more probably than not* was proximately caused by the negligence of the defendant or defendants." (Emphasis added.) Dr. Eckstein's inability to "say for certain" what a chest x-ray would have shown is legally meaningless. Conclusive evidence of causation is not required in a medical malpractice case, or any other tort action.[1]

---

[1] Nor is it necessary for an expert to state an opinion within a reasonable degree of medical certainty. *Knoper v Burton*, 12 Mich App 644, 650-651; 163 NW2d 453 (1968), rev'd on other grounds 383 Mich 62 (1970). Rather, an expert may express an opinion in probability terms, as did Dr. Eckstein.

The majority additionally asserts that the circuit court considered Dr. Eckstein's testimony "purely speculative," and for that reason justifiably refused to consider it. There was nothing speculative about Dr. Eckstein's straightforward agreement that a chest x-ray likely would have shown pneumonia. A court's disagreement with an expert's conclusions does not transform an otherwise admissible opinion into speculation.

Nor has the majority accurately presented the testimony of Dr. Gordon, plaintiff's infectious diseases expert. According to the majority, "the trial court was aware that Dr. Gordon testified it was medically impossible to determine whether Gerow had pneumonia or sepsis when Dr. Thies treated him . . . because Gerow did not present with any symptoms of pneumonia or sepsis." It is true that when asked whether Gerow was suffering from pneumonia on November 7, Dr. Gordon responded: "I don't know." Neither the circuit court nor the majority have the luxury, however, of selecting which expert to believe. When the evidence conflicts, the circuit court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations or weighing the evidence. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). Here, this rule required the circuit court to credit Dr. Eckstein's view.

Furthermore, the majority ignores a critical part of Dr. Gordon's testimony buttressing plaintiff's causation proofs:

> *Q.* Doctor, within a reasonable degree of medical probability, would the administration of antibiotics on 11-7-2013 ED visit [have] precluded Mr. Gerow's death in the time period that he died?
>
> MR. WULFMEIER: Object to form and foundation
>
> MS. CARDELLI: I join.
>
> *Q.* Go ahead.
>
> *A.* So on the 7th, the patient didn't have a fever, he didn't have a leukocytosis, excuse me, he didn't have a fever or evidence of clinical sepsis, so at that point in time . . . if the infection was present, it was not progressed to the point where treatment would not have had a significant impact on the course of disease. *So if he would have received antibiotics on the 7th, there's a greater than not chance that he would have survived this infection.* [Emphasis added.]

Regardless of whether Dr. Gordon "knew" what an x-ray would have shown on November 7, he testified that treatment of pneumonia on that date would have resulted in Gerow's survival. The evidence of record, viewed in the light most favorable to plaintiff, substantiated that if a chest x-ray had been performed on November 7, it likely would have shown pneumonia. And if treated on that day with antibiotics, Gerow likely would have survived. That evidence sufficed to defeat summary disposition under MCR 2.116(C)(10).

By ignoring the expert testimony supporting plaintiff's case and judging the experts' credibility, the majority rubber-stamps the circuit court's errors. Neither this Court nor the circuit

court may disregard relevant and competent evidence or determine its weight. I would reverse the circuit court's grant of summary disposition and remand for further proceedings.

/s/ Elizabeth L. Gleicher